George MILLER, Appellant,

v.

Vivian HUEBNER et al., Appellees.

No. 539.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 1, 1971.

Rehearing Denied Jan. 5, 1972.

Maurice A. Lehmann, Houston, L. F. Hardin, Rosenberg, for appellant.

Charles D. Houston, Conner & Odom, Sealy, for appellees.

SAM D. JOHNSON, Justice.

This suit involves a controversy between George Miller and his two sisters, Vivian Huebner and Mae Olive Miller, over ownership of three tracts of land in Austin County, Texas. At the time the dispute arose record title to the property was in George Miller. In an effort to protect what they conceived to be their rights the two sisters filed an affidavit of equitable interest in the deed records of Austin County.

George Miller responded by filing suit to remove the alleged cloud from his title by having the affidavit declared to be of no force and effect. The sisters filed an answer and cross-action, claiming a one-third equitable interest, each, in the property.

The case was tried to a jury in August, 1969, and resulted in a verdict for the two sisters, Vivian Huebner and May Olive Miller, awarding a percentage interest in these three tracts. However, George Miller's motion for new trial was granted by the trial court.

Thereafter, the case was again tried to a jury during December, 1970, and resulted in the jury verdict in the favor of the two sisters for an interest in the larger 276 acre tract only. In this instance judgment was entered on the verdict of the jury in favor of Vivian Huebner and Mae Olive Miller, appellees here, which provided that the sisters each take a one-third equitable interest in the 276 acre tract held in George Miller's name, and further that the

sisters were each entitled to the proceeds of 92.90 acres of such realty, if sold. The court awarded these interests to both of these sisters on the basis of a constructive trust impressed upon George Miller's record ownership of the 276 acre tract. The two smaller tracts were awarded outright to George Miller. From that part of the judgment affecting the larger 276 acre tract only, George Miller, the appellant, duly perfects this appeal urging reversal and alternatively rendering of judgment or remand.

The appellant, George Miller, and the appellees, Mae Olive Miller and Vivian Huebner, are the children of Walter J. Miller and wife, Josie Miller, both parents now deceased. The Miller family lived on a 40 acre farm in Austin County. In 1932, the father, Walter Miller, became ill and was thereafter virtually helpless until his death in 1952. During many of the intervening years the mother, Josie Miller, was ill and she was incapacitated at the time of her death in 1970. At the time their father became helpless, Vivian was 17 years old and her sister Mae Olive was 18. Both quit school in the 7th grade in order to work at home.

As a result of these circumstances the oldest of the children, George Miller, assumed the role of head of the household. His two sisters apparently felt obliged to follow his orders. He was relied upon by his sisters to manage all business affairs including the one to be described. At a family meeting in 1947 it was agreed that the 276 acre tract of land here in question should be purchased. George Miller and his two sisters pooled their finances to make the down payment on the property and agreed that the three of them would work together in a joint effort to pay the balance of the purchase price. Their abiding confidence and trust in their brother at the time of and in the years after the agreement and decision to purchase the property is uncontradicted. In 1965 George Miller married. He then repudiated the alleged agreement for all to work

toward payment of the acreage, declaring himself sole owner of the property. It was at this time that appellees first learned that they were not named in the deed to the property as grantees.

As appellees' brief emphasizes it must be borne in mind that appellees had limited educations and very restricted contact with the outside world. Their communication was largely in the German-American dialect of the rural community in which they were reared. Their limited grasp of the English language is apparent in the statement of facts and makes for many of the communication difficulties which are at the basis of much of the contention now before this Court.

To George Miller's amended petition the two sisters filed an amended answer including a general denial and a cross-action which sketched the family history of the Miller children and alleged inter alia that they contributed money, labor, stock and equipment; that George Miller directed the family and managed the finances; that George Miller represented to his two sisters that the family's operation was for the benefit of all equally; that the capital used to purchase the property now recorded in George Miller's name was the estate owned in common; that George Miller co-mingled his income and earnings and those of the estate; and that George Miller refused to make partition and settlement with his two sisters. The imposition of a constructive trust and/or a resulting trust in favor of the two sisters was expressly urged. The prayer was for a declaration that George Miller holds an undivided two-thirds interest in the property in his name in trust for the two sisters, and for an accounting.

On appeal appellant lists 20 points of error, the first five assert no evidence or pleading to sustain the verdict and judgment imposing a constructive trust. By the second set, encompassing points six through nine, he contends that there is no evidence or insufficient evidence to estab-lish a confidential relationship, and that special issues found to establish a confidential relationship are not controlling issues and do not inquire as to a confidential relationship separate and apart from the transaction of the purchase. The third set, points ten through sixteen, asserts the absence of pleadings, and insufficient or no evidence in establishing an agreement, and that the matter of an agreement is evidentiary and not controlling for a judgment. The fourth set, points seventeen through twenty, contends error in the trial court's refusal to disregard the issues concerning the monetary amount advanced by the appellees, and the trial court's refusal to grant judgment n. o. v. or a new trial. All points will be overruled.

Appellees, in their cross-action, alleged the creation by operation of law of a constructive trust in an undivided two-thirds of all the property, and further alleged that a constructive trust should be imposed to prevent unjust enrichment of their brother, a fiduciary in a confidential relationship. Appellees' pleadings clearly assert the creation of a constructive trust and allege the necessary bases for the creation of such remedy.

■ Appellant contends that for a trust in land to be established an enforceable contract must be proven as a basis for that trust. The cases cited by appellant to this effect are not considered to be controlling, however, as they refer to express or resulting trusts whereas the instant case is concerned with the imposition of a constructive trust. It is a constructive trust that the trial court's judgment imposed here. A constructive trust is not in reality a trust but is an equitable remedy. 54 Am.Jur., Trusts, sec. 219, p. 169 (1945); Scott, Trusts, sec. 462, p. 3412 (1967). Generally, a constructive trust is a relationship with respect to property subjecting the person, by whom title to the property is held, to an equitable duty to convey to another on the ground that his acquisition or retention is wrongful, and that he would be

unjustly enriched if he were permitted to retain the property. Scherer v. Wahlstrom, 318 S.W.2d 456 (Tex.Civ.App.-Fort Worth 1958, writ ref'd); Restatement of Restitution, sec. 160, p. 640 (1937). It is not necessary to the establishment of a constructive trust that an express or conventional trust relationship shall exist between the parties, or that any promise shall have been made by the one for the benefit of the other. 89 C.J.S. Trusts § 139a, p. 1020 (1955). Where a constructive trust *is* based upon a promise, the promise need not be expressly made *since actual cooperation* or *silent acquiescence may have the same effect.* 89 C.J.S. Trusts § 139a, p. 1020 (1955) (emphasis added).

The record, though containing some ambiguity, demonstrates the acquisition and operation of the property as a joint family enterprise. It is clear enough that the two sisters contributed money in the initial payment on the property and contributed in labor and assets in retaining it. The absence of a formal agreement between George Miller and his two sisters underscores the pervasiveness of the understanding—no written or detailed agreement was contemplated or thought necessary. After hearing all of the evidence the jury found the existence of an agreement. Even if such findings were erroneous they would not constitute reversible error because they were not calculated to nor did they probably cause the return of the particular judgment. See Calvert, The Development of the Doctrine of Reversible Error in Texas, 31 Tex.L.Rev. 1, 18 (1952).

■ An agreement or promise between the parties is not a prerequisite to imposition of a constructive trust. As Justice Greenhill said, speaking for the Supreme Court in Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 405 (1960):

"A constructive trust does not, like an express trust, arise because of a manifestation of intention to create it. It is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. It is used, among other things, to adjust rights of partners. The same basic rules . . . apply to joint venturers."

■ Constructive trusts, then, are usable in situations involving actual or constructive fraud. Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158 (1943); Thigpen v. Locke, 363 S.W.2d 247 (Tex.Sup.1962). Among the types of constructive fraud is breach of a confidential relationship. Omohundro v. Matthews, supra; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, (1951); Mills v. Gray, 147 Tex. 33, 210 S. W.2d 985 (1948); Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471 (1945). And the particular elements of a partnership or joint venture need not be strictly met. Gaines v. Hamman, 163 Tex. 618, 358 S. W.2d 557 (1962).

■ Confidential relationships may arise not only from technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc., but may arise informally, from moral, social, domestic, or purely personal relationships. Thigpen v. Locke, supra; Thompson v. Newman, 378 S.W.2d 879 (Tex.Civ.App.-Waco 1964, no writ); Holland v. Lesesne, 350 S.W.2d 859 (Tex.Civ.App.-San Antonio 1961, writ ref'd n. r. e.). See also 54 Am.Jur., Trusts, sec. 225, p. 173 (1945). And the relationship must exist apart from and prior to the transaction made the basis of the suit. Consolidated Gas & Equipment Co. v. Thompson, 405 S.W.2d 333 (Tex.Sup.1966). The record amply evidences a confidential relationship between the parties in this case.

■ Among several factors which indicate a confidential relationship are kinship and lack of education, taken together with evidence of trust. 2 Bogert, Trusts, sec. 482, p. 141, 152 (1965). The record here clearly demonstrates the parties' kinship

in the seventh grade, professed ignorance of the ways of the world and had only marginal contact with life beyond the "home place". The record is equally clear as to the trust and confidence the two sisters confided in their brother. All money earned by the two sisters was turned over to their brother without receipt, they worked on the farm without pay for the mutual benefit of all, and they entrusted all the decision-making to their brother for years. They testified to their understanding that this purchase of land primarily with the proceeds of joint effort was "so we could raise our cattle and have something for the rest of our lives, of course". It was not until 1967 that the two sisters discovered that their brother had placed the property, which had been bought as a result of joint labor and income, in his name alone. The confidential relationship is clearly evident in the record, it was found to be breached by the jury, and it poses a classic case for the imposition of a constructive trust. The quantity and quality of evidence presented is more than sufficient to sustain the jury's verdict.

■ Appellant contends that the issues relative to the confidential relationship were not controlling issues in that they did not inquire as to such relationship separate and apart from the purchase of the property in issue. The special issue submitted to the jury asked whether a confidential relationship existed "at the time of or just prior to the purchase of the 276 acre tract. . . ." The submission in no way limited the confidential relationship to this particular transaction and the testimony clearly depicts a relationship extending back years before the purchase was ever considered.

■ Appellant's final points of error assert that there was no basis on which it could be determined that each sister was entitled to one-third of the property. The testimony demonstrates that the parties agreed to pool their funds and make the initial payment on the property, to pay off

the balance through joint effort, and to own the land jointly. Where it is impossible for parties to trace their exact contribution into an acquisition, but rather the property was purchased as a joint enterprise, it may fairly be presumed that each party has contributed one-third of the total. Even were that not so, the finding to these special issues could hardly be considered reversible error.

Appellant's points of error are overruled. The judgment of the trial court is affirmed.