Thomas **KOSTELNIK** and Margaret Kostelnik, Appellants,

v.

Marie Martha **ROBERTS**, Appellee.

No. 13–83–507–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 6, 1984.

Rehearing Denied Oct. 25, 1984.

---

1. Rule 166A at that time specified a 10 day    notice.

David Roberts, Garner & Roberts, Port Lavaca, Terrell S. Mullins, County Atty., Hallettsville, for appellants.

Timothy A. Watt, Wiley, Garwood, Stolhandske & Simons, William F. Stolhandske, Stolhandske, Simmons, Stolhandske, & Conley, San Antonio, for appellee.

Before NYE, C.J., and UTTER and SEERDEN, JJ.

## OPINION

UTTER, Justice.

This is a suit in which appellee sought to impose a constructive trust on certain property, which appellee had previously conveyed to appellants. Trial was before the court without a jury. We affirm the judgment of the trial court.

Since 1965, appellee and her husband lived in a mobile home which was located behind appellant's residence. In October 1981, appellee and her husband moved from their mobile home into a convalescent home and conveyed to appellants certain property, including the mobile home, an automobile and $65,753.10. Between October 1981 and March 1982, appellee and her husband resided in the convalescent home. In March 1982, appellee's husband died; and, subsequently, appellee decided to move to San Antonio and made demand upon appellants for the return of the property conveyed to them in 1981. Appellants refused to return the conveyed property; and, as a result of appellants' refusal to return the property, appellee brought suit.

Upon trial to the court, the trial court found: (1) that there existed between the parties a confidential and fiduciary relationship; (2) that there were transfers of property and things of value made by appellee and her husband to appellants; (3) that appellants had failed to prove the validity and fairness of the transfers made; (4) that the transfers were not intended as gifts; and, (5) that a constructive trust did exist.

In their first through third points of error, appellants complain of the sufficiency of the evidence to support the trial court's express or implied findings (1) that a confidential and fiduciary relationship existed between the parties which was breached, thereby meriting the imposition of a constructive trust; and, (2) that the transfers were not intended as gifts.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

 "A constructive trust arises where a conveyance is induced on agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made." *Mills v. Gray*, 210 S.W.2d 985 (Tex.1948) at p. 988, citing 54 Am.Jur. 1978, § 233. Such confidential relationships may arise not only from technical fiduciary relationships, such as attorney-client, trustees cestui que trust, partner and partner, etc., but may arise informally from moral, social, domestic or purely personal relationships. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex.1962); *Miller v. Huebner*, 474 S.W.2d 587 (Tex. Civ.App.—Houston [14th Dist.] 1971, writ ref'd. n.r.e.). Also, the confidential relationship must exist apart and prior to the transaction made the basis of this suit. *Consolidated Gas & Equipment, Co. v. Thompson*, 405 S.W.2d 333 (Tex.1966); *Miller v. Huebner*, 474 S.W.2d 587 (Tex. Civ.App.—Houston [14th Dist.] 1971, writ ref'd. n.r.e.).

 At trial, appellee testified that appellant Thomas Kostelnik was "real close to us. In fact, like a son," and was "related through marriage." The testimony further shows that appellant Thomas Kostelnik knew that he had been made a beneficiary of appellee and her husband's will, wherein they left "everything they owned" to appellants. Appellants had given appel-

lee and her husband a lifetime lease on the land behind appellants' residence on which appellee and her husband had lived on a mobile home from 1965 until 1981. Appellant Thomas Kostelnik, also, made bank deposits and paid bills for appellee and her husband and was an authorized signatory on appellee and her husband's checking and savings accounts. In addition, appellants went to the grocery store and ran errands for appellee and her husband and drove appellee and her husband to doctor appointments.

Appellants, also, prepared appellee and her husband's gift tax return and made application for Medicaid benefits on behalf of appellee and her husband. Furthermore, when appellee and her husband made their decision to enter the convalescent home, appellee and her husband confided this to appellants, and appellants offered to make and personally made the arrangements for their admission into the convalescent home. Appellee testified that, before they were moved into the convalescent home, she and her husband were told by Thomas Kostelnik "that we couldn't have any property or anything" at Stevens Convalescent Home and that, "if we did go into Stevens, everything we had would be taken away from us." Appellee further testified that, regarding their property, Thomas Kostelnik suggested that she and her husband "put it all in his name, and then Stevens wouldn't get it away from us" and that it was upon that suggestion that "we agreed to let Tom keep our money and everything for us" until the time "when Bob got well, that everything would be in his name, if we got well, he would turn it back to us." The evidence further shows that the agreement took place on October 7, 1981, and the actual transfers of money from checking and savings accounts and of the mobile home and automobile commenced on October 8, 1981. Appellee and her husband were transported to the bank and savings and loan by appellants. In addition, the evidence shows that appellee and her husband, in 1979, had advanced cash to appellant Thomas Kostelnik to pay for pre-paid burial contracts.

We hold that the existence of a confidential relationship is clearly evident in the record and the quantity and quality of evidence presented is more than sufficient to sustain the trial court's express finding of a confidential relationship between the parties and its implied finding of a breach thereof. In addition, after having reviewed all of the evidence, we hold that there is sufficient evidence to sustain the trial court's finding that the transfers were not intended as a gift. Appellants' first through third points of error are overruled.

In their fourth point of error, appellants assert that the trial court erred in imposing a constructive trust upon the subject property because appellee did not come before the trial court of equity with "clean hands." In their brief on appeal, appellants allege that the record demonstrates that appellee benefited from her gifts to appellants by having "defrauded the State of Texas by accepting Medicaid benefits" because she was allowed, due to her new financial status following the transfers of property, to receive Medicaid benefits from the State of Texas while residing in the convalescent home. Appellants contend that the subject transactions were questionable dealings made by appellee in order to become eligible for the Medicaid benefits, the receipt of which would result in unjust enrichment, which courts of equity are to prevent and not to encourage. Moreover, appellants contend that, if the judgment of the trial court imposing a constructive trust is allowed to stand, appellants will be injured by appellee's conduct.

Regardless of the truthfulness of appellants' allegations that appellee defrauded the State of Texas and of appellees' possible participation in the alleged questionable dealings, appellants are not in a position to assert the "clean hands" doctrine. "The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that he himself has been injured by such conduct,

to justify the application of the principle to the case. The wrong must have been done to the defendant himself and not to some third party." *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960). Furthermore, it is a matter within the sound discretion of the trial court to determine whether appellee has come into court with clean hands and whether the alleged fraudulent actions were such as to deny appellee relief. *Hand v. State*, 335 S.W.2d 410 (Tex.Civ.App.—Houston 1960, writ ref'd. n.r.e.). We hold that the trial court, sitting as a court of equity, did not abuse its discretion by failing to apply the "clean hands" doctrine to the instant case. Appellants' fourth point of error is overruled.

In their fifth point of error, appellants assert that the trial court erred in imposing a lien on their real property, their alleged homestead entitled to protection from such liens, in violation of TEX. CONST. art. XVI § 50.

The initial burden of establishing that property is homestead property is on the claimant of homestead protection. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd. n.r.e.); *see Burk Royalty Co. v. Riley*, 475 S.W.2d 566 (Tex.1972). It is well settled in this State that, in order to establish homestead rights, the proof must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Lifemark Corp. v. Merritt*, 655 S.W.2d at p. 314; *Sims v. Beeson*, 545 S.W.2d 262 (Tex.Civ.App.—Tyler 1976, writ ref'd. n.r.e.); *Prince v. North State Bank*, 484 S.W.2d 405 (Tex.Civ.App.—Amarillo 1972, writ ref'd. n.r.e.). The only evidence bearing on the issue of homestead was that appellants lived on the real property, on which they built a new home, in part, with the funds which appellee and her husband had earlier conveyed to them. We hold that such evidence was insufficient to establish that the property was homestead property, which deserved homestead protection under TEX. CONST. art. XVI § 50 from the imposition of a judicial lien.[1] Appellants' fifth point of error is overruled.

The judgment of the trial court is AFFIRMED.

---

1. We, furthermore, note that it has long been decided that homestead exemption laws of this state were never intended to be, and cannot be, the haven of wrongfully obtained money or properties. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd. n.r.e.); *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434 (Tex.Civ.App.—El Paso 1967, writ ref'd. n.r.e.).