ACCEPTED
04-15-00110-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/19/2015 3:07:00 PM
KEITH HOTTLE
CLERK

NO. 4-15-00110-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
8/19/2015 3:07:00 PM
KEITH E. HOTTLE
Clerk

_____

**IN RE THE ESTATE OF
WILLIAM H. BUTT, DECEASED**

_____

On Appeal from the County Court of Kimble County, Texas
Sitting in Matters Probate; Cause No. 2284
Hon. Joe H. Loving, Presiding

_____

**BRIEF OF APPELLEE,
SHERRY MCNUTT**

_____

GENE GARCIA
State Bar No. 07634500
809 S. Port Ave.
Corpus Christi, Texas 78405
(361) 883-8651
(361) 288-8392 – facsimile
email: gene@garciatexaslaw.com

**ATTORNEYS FOR APPELLEE,
SHERRY MCNUTT**

# IDENTITY OF PARTIES AND COUNSEL

1. **Appellants –** McNutt Ranch, Ltd.
   DMK Ranching, L.L.C.
   McNutt Management, L.L.C.

2. **Counsel for Appellant**

Craig White
Law Office of Craig L. White
111 W. Olmos Dr.
San Antonio, Texas 78212
210-829-7183
craigwhite@111westolmos.com

Jeff Small
Law Office of Jeff Small
12451 Starcrest, Suite 100
San Antonio, Texas 78216
210-496-0611
jdslaw@satx.rr.com

Allen J. Ahlschwede
522 Main Street
Junction, Texas
325-446-9425
ajalaw@ahlschwedelaw.com

Former Trial and Appellate Counsel:

J. Ken Nunley

Dennis Bujnoch

3. **Appellee –** Sherry McNutt

4. **Counsel for Appellee**

Gene Garcia
809 S. Port Ave.
Corpus Christi, Texas 78405
(361) 883-8651
(361) 288-8392 – facsimile
email: gene@garciatexaslaw.com

Trial Counsel:

John F. Nichols, Sr.
5020 Montrose Blvd., Suite 400
Houston, Texas 77006
713-654-0708/F: 713-654-0706
john@nicholslaw.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...................................................................... ii

INDEX OF AUTHORITIES................................................................................ iv

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT REGARDING ORAL ARGUMENT ............................................. 2

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT.................................................................................................... 4

    I.    Oral Gifts of Real Property. ................................................................. 4

    II.   The evidence introduced at trial was legally and factually sufficient to support the jury's finding that William H. McNutt gave Appellee the foreman's house and ½ of the North Side in 1983. .............................. 5

        a.   Appellate Review of Clear and Convincing Evidence. ........................... 6

        b.   Testimony of Witnesses at Trial........................................................ 7

    III.  The Trial Court Did Not Err In Refusing To Grant A Directed Verdict Or A Judgment N.O.V. ................................................................ 15

        a.   Standard of Review................................................................. 15

        b.   The Evidence Was Legally Sufficient To Withstand The Motion For Directed Verdict and Motion for Judgment Notwithstanding the Verdict. ................................................................ 17

    IV.  The Jury Charge Submitted To The Jury Was Correct. ............................ 18

    V.   Appellants failed to properly present evidence of juror misconduct that would be sufficient to set aside the jury's verdict. ............................ 23

CONCLUSION ...............................................................................................23

PRAYER .......................................................................................................24

CERTIFICATE OF COMPLIANCE.....................................................................25

CERTIFICATE OF SERVICE............................................................................26

# INDEX OF AUTHORITIES

**Cases**

*Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225 (Tex.App.—San Antonio 2001, rev. denied) ........................................17, 18

*Berry Prop. Mgmt., Inc. v. Bliskey,* 850 S.W.2d 644 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.)................................................................19

*Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670 (Tex.1990) ...............................16

*Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743 (Tex.1980) ........................18

*City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005) ....................................6, 17

*Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978) ...............................................15

*Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S. W. 2d 392 (Tex. 1991) ..........15

*Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 372 (Tex.2000) .............23

*Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114 (1921). ............................. 4

*In re C.E.,* 100 S.W.3d 368 (Tex.App.—San Antonio 2002, no pet.) .................... 6

*In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002) ...................................................... 6

*In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002) ....................................................... 6

*In re M.M.,* 184 S.W.3d 416 (Tex.App.—Dallas 2006, no pet.) .......................... 7

*Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986)...................................................................................19

*M.J. Sheridan & Son Co. v. Seminole Pipeline Co.,* 731 S.W.2d 620 (Tex.App.—Houston [1st Dist.] 1987, no writ)...................................................16

*Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226 (Tex.1990)..............................16, 17

*Marin Real Estate Partners, L.P. v. Vogt,* 373 S.W.3d 57 (Tex.App.—San Antonio 2011, no pet.) .................................................................................. 7

*Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308 (Tex.1986).....................16

*Oadra v. Stegall,* 871 S.W.2d 882 (Tex.App. —Houston [14th Dist.] 1994, no pet.)................................................................................................. 5

*Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.,* 29 S. W. 3d 74 (Tex. 2000) .....................................................................................................15

*Qantel Bus. Sys., Inc. v. Custom Controls,* 761 S.W.2d 302 (Tex.1988)..........16, 17

*Richardson v. Laney,* 911 S.W.2d 489 (Tex.App. —Texarkana 1995, no writ) ................................................................................................ 5

*Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647 (Tex.1990) ....................... 18

*Thompson v. Dart*, 746 S.W.2d 821 (Tex.App. —San Antonio 1988, no writ) ....... 4

*Woodworth v. Cortez*, 660 S.W.2d 561 (Tex.App. —San Antonio 1983, writ ref'd n.r.e.) ................................................................................................. 5

## Rules

TEX. R. APP. P. 44.1(a); ....................................................................................... 19

TEX. R. CIV. P. 301 .............................................................................................. 15

Tex. R. Civ. P. 327(b) ......................................................................................... 23

NO. 4-15-00110-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

_____

**IN RE THE ESTATE OF
WILLIAM H. BUTT, DECEASED**

_____


On Appeal from the County Court of Kimble County, Texas
Sitting in Matters Probate; Cause No. 2284
Hon. Joe H. Loving, Presiding

_____

**BRIEF OF APPELLEE**
_____

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

Appellee, Sherry McNutt ("Appellee"), submits this Brief and requests the Court to affirm the decision of the trial court.

## STATEMENT OF THE CASE

This case first went to trial in 2011 to determine whether William H. McNutt made a gift of the north 2000 acres of his ranch to his daughter, Sherry McNutt, Appellee, in 1983. The trial court found that William H. McNutt gifted the "foreman's house" and five acres of land that was located on the north 2000 acres of his ranch, but also found that he did not gift the entire north side of the ranch to

1

her. The case was appealed to this court which upheld the decision that there was not a gift of the entire north side of the ranch, but remanded the case for a new trial on the issues of whether there was a gift of the foreman's house and an appropriate amount of acreage for the full use and enjoyment of the house.

After the second trial, the jury once again found that William H. McNutt gifted the foreman's house to Appellee and that "1/2 of the North Side" was the necessary amount of land to allow Appellee an appropriate amount of acreage for the full use and enjoyment of the house. Appellants have appealed the judgment of the trial court awarding Appellee the foreman's house and ½ of the North Side of the ranch.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument will aid this Court in determining the issues presented by this appeal. The facts in this case are straight-forward and the issues in this case have previously been addressed by this Court.

## STATEMENT OF FACTS

In 1983, William H. McNutt called his daughter, Appellee, Sherry McNutt, and asked her to return to the ranch and run it for him. William H. McNutt told Sherry McNutt that if she agreed to return half the ranch was hers. Sherry McNutt returned to the ranch, made substantial improvements to the foreman's house and to the surrounding area, garden, and barns. She ran two operations, livestock and

2

goats and sheep, until the family and herself ventured into exotics. Sherry McNutt managed the South side exotic operation for her dad, William H. McNutt until 2001 when William H. McNutt gave the all the wildlife to Mrs. McNutt and to Sherry McNutt including the income thereof.

At no time prior to his death did William H. McNutt ever try to dispossess Sherry McNutt of the foreman's house. William never sought to undo the finality of the 1983 gift of the foreman's house and the appropriate amount of acreage for the full use and enjoyment of the house.

After a bench trial in 2011, Judge Loving found that William H. McNutt gave the foreman's house to Sherry McNutt. On appeal, this Court found that there was sufficient evidence of a gift of the foreman's house and remanded the case to determine the appropriate amount of acreage for the full use and enjoyment of the house. After a second trial, the jury again found that William H. McNutt gave the foreman's house to Sherry McNutt, and after hearing the testimony the jury found that ½ of the North Side was the appropriate amount of acreage for the full use and enjoyment of the house.

## SUMMARY OF ARGUMENT

The gift of the foreman's house legally meets the requirements of an oral gift of real property. The evidence at trial establishes that William H. McNutt gave the foreman's house to Sherry McNutt in 1983. Since the evidence at trial was legally

3

and factually sufficient to support the jury's finding of a gift to Sherry McNutt, the Court did not err in refusing to grant the Appellant's Motion for Directed Verdict and Motion for Judgment N.O.V.

This case was remanded for the determination of two issues: (1) was there an oral gift of the foreman's house to Appellee, and; (2) what amount of land an appropriate amount of acreage for the full use and enjoyment of the house. These issues were correctly submitted to the jury in the form of the jury charge given by the trial court.

Although Appellants argue that misconduct occurred during the jury deliberations, they have failed to present any admissible evidence of the alleged misconduct.

## ARGUMENT

### I. Oral Gifts of Real Property.

There are three elements required to establish an oral gift of real property: (1) a gift in praesenti, (2) possession under the gift by the donee with the donor's consent, and (3) permanent and valuable improvements made on the property by the donee with the donor's knowledge or consent or, without improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift. *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex.App. —San Antonio 1988, no writ); *see also Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921).

4

"In praesenti" means at the present time; thus, to be a gift in praesenti, the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Id.*

However, a presumption of gift arises if a parent delivers possession, conveys title, or purchases property in the name of a child. *Oadra v. Stegall*, 871 S.W.2d 882, 891 (Tex.App. —Houston [14th Dist.] 1994, no pet.); *Richardson v. Laney,* 911 S.W.2d 489, 492 (Tex.App. —Texarkana 1995, no writ); *Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex.App. —San Antonio 1983, writ ref'd n.r.e.). This is a rebuttable presumption that the opponent must show by clear and convincing evidence at trial. *Richardson*, 911 S.W.2d at 492.

II.     **The evidence introduced at trial was legally and factually sufficient to support the jury's finding that William H. McNutt gave Appellee the foreman's house and ½ of the North Side in 1983.**

Appellants' fourth issue challenges the legal and factual sufficiency of the evidence to support the jury's finding that William H. McNutt gave the foreman's house and ½ of the North Side of the ranch in 1983. A review of the testimony at trial shows that the overwhelming weight of the evidence supports the jury's findings.

5

### a. Appellate Review of Clear and Convincing Evidence.

When the burden of proof at trial requires clear and convincing evidence, the Court of Appeals must review the sufficiency of the evidence by giving "due consideration to evidence that the fact finder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); (relying on *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)); *In re C.E.*, 100 S.W.3d 368, 370 (Tex.App.—San Antonio 2002, no pet.). In a legal sufficiency review, we look at all the evidence in the light most favorable to the fact finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266. Unless the Court determines that no reasonable fact finder could form a firm belief or conviction that the fact is true, the Court must conclude that the evidence is legally sufficient. *Id.*

In a factual sufficiency review, the Court must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.*, citing *In re C.H.*, 89 S.W.3d at 25. The Court should consider whether disputed evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its finding. *Id.* On Appeal, the Court may not substitute its judgment for that of the fact-finder because the fact-finder "[is] the sole judge of the credibility of the witnesses and the weight to give their testimony." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *see also*

6

*Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 83 (Tex.App.—San Antonio 2011, no pet.). The evidence is factually sufficient if a factfinder could reasonably form a firm belief or conviction about the truth of the matter to be proven. *In re J.F.C.*, 96 S.W.3d at 266; *see also In re M.M.,* 184 S.W.3d 416, 418 (Tex.App.—Dallas 2006, no pet.).

**b.       Testimony of Witnesses at Trial**.

The following testimony supports the jury's verdict that William H. McNutt gave his daughter the foreman's hours in 1983:

**Testimony of David Ross**

Q. (By Mr. Nichols) Now, Mr. Ross, regarding the house that's on the north side of I-10 on the McNutt Ranch --

A. Yes.

Q. -- did you ever have any conversations with Bill McNutt regarding that house?

A. Yes.

Q. What did he tell you?

A. Well, that it was the previous ranch foreman's house and that it was given to Sherry. In fact, I helped Sherry remodel that house, helped her furnish it, spent time there as a guest with other projects that she worked on around there, building barns, building her gardens, landscaping, et cetera.

Q. All right. My question to you, sir, was Bill McNutt clear or unclear about that statement that you just made?

A. I felt it was clear.

Q. All right, and my second part of my question was, was his statement to you convincing or unconvincing?

A. It would be convincing.

Q. All right, and through the years that you went out to the McNutt Ranch, did you ever hear Bill McNutt make any statements in contravention of what you just testified to?

A. No. I did not.

Q. All right. So the home that's on the north side, to paraphrase your testimony, he said that's Sherry's home.

A. Correct.

RR 1; p. 153, l. 15 – p. 154, l. 20.

Q. All right. Now -- so from the time that you met him, your testimony is never at any time did he ever modify, retract, or make any statements regarding Sherry McNutt's use of the acreage on the north side of that for the full use and enjoyment of the house?

A. No.

RR 1; p. 157, ll. 19-24.

**Testimony of Tom Mayo**

Q. All right, and what -- did he ever refer to any restrictions on Sherry's use, occupation, possession of that acreage on the north side of I-10?

A. No. It was her place.

RR 1; p. 194; ll. 3-7.

**Testimony of Sherry McNutt**

Q. All right. So the residence that's on that north side which is I guess referred to sometimes as the foreman's house?

A. Yes, sir.

8

Q. Did you -- when you moved back, did you occupy that residence?

A. There was construction going on when I first moved back.

Q. All right.

A. When my parents were aware that I was coming, they had asked me to come, they started to fix it up. I actually stayed with my parents in their home until an unfortunate accident -- I mean, incident that the carpenters were terminated, and so I moved in with the house unfinished really, and I finished it myself.

Q. Okay. Now, Mr. Ross who testified as our first witness here --

A. Uh-huh.

Q. -- he testified that he worked and did work on that ranch shortly after you came back and that you did too. Correct or not correct?

A. Yes, sir.

Q. All right, and so you worked yourself to make improvements to that house?

A. Yes, sir.

Q. And for what period of time do you suspect that it was -- that you worked and did clean-up, paint-up, fix-up?

A. It was ongoing.

Q. Okay, and from 1983 till what period of time did you more or less have the full occupancy of that residence on the north side?

A. Until the lawyers and accountants and my dad became ill and my sister showed up.

RR 1; p. 243, l. 20 – p. 245, l. 3

Q. And Exhibit No. 3[sic], how do -- how do they refer to that house on there, the foreman's house that you --

A. Your house.

9

Q. Your home or your house?

A. I'm sorry. "Your home." Yes.

Q. Okay.

A. Yes.

Q. All right, and was that consistent or inconsistent with his conduct all the way up to that point?

A. Consistent.

RR 1; p. 259. ll. 2-13

Q. And describe the conversation that you had with your father when he gave you that foreman's house.

A. He called me in Colorado and asked me to come home. The foreman had died in 1981. He and mother tried to -- to run the ranch themselves and were, I guess, incapable of -- they didn't want to do it anymore. So they asked me to come home to run the ranch, and he would give me half the ranch.

Q. It's your testimony that in 1981, your daddy wasn't capable of running that ranch. Is that what you just testified to?

A. That's what he told me in '83. I went home in '83. He ran it from '81 into '83.

Q. Okay. So he called you --

A. Or he and mother did.

Q. He called you and what did he say?

A. If I would come home and run the ranch, he would give me half the ranch.

Q. Okay, and -- and he said he would give you half the ranch.

A. Yeah.

Q. Something in the future.

10

A. Yes, sir.

Q. Okay.

A. Not necessarily in the future.

Q. But didn't you just say --

A. He gave it to me when I went home.

RR 2; p. 42, l. 10 – p. 43, l.11

Q. (By Mr. Nichols) Tell -- then tell the lady and the gentlemen of the jury as closely as possible what he told you in that telephone conversation in 1983.

A. That he needed me and he wanted me to come back, and of course that had been my lifelong dream. He told me he would give me half the ranch when I came back.

Q. Did he say which half?

A. Specifically at that time, no, but when I moved into the foreman's house, it became the -- the north side --

Q. All right.

A. -- and my sister lives on the south side. Q. All right, and at that point in time from

1983 -- are you sure as to the date, 1983? A. Yes.

Q. All right. So his statement, if you would come back, he would do this, and you came back and therefore he did that.

A. Yes, sir.

RR 2; p.116, l. 17 – p. 117, l. 12.

With respect to the amount of land that Appellee needed in order to enjoy her gift of the foreman's house, Appellant testified as follows:

11

Q. Okay. Now -- now, what kind of operations were you running on the McNutt Ranch on the south side that you received a salary for?

A. Cattle, sheep, goats, deer, wild game or exotic game.

Q. All right. What about over on the other side of I-10?

A. Same.

Q. Same thing?

A. Yes.

Q. What do you feel would be necessary for you to have for the full use and enjoyment of that house over there on the north side of I-10?

A. Acreage enough to run those operations.

RR 2; p. 10, l. 14 – p. 11, l. 2.

The only evidence introduced at trial to rebut the presumption of a gift was that Appellant did not pay taxes on the property and that Bill McNutt did not file a gift tax return in 1983 with respect to his gift of the foreman's house to his daughter. However, there was plenty of evidence at trial to rebut this argument:

**Testimony of Tom Mayo**

Q. In fact, all your properties that you've ever owned you've had a warranty deed, correct, a deed of trust?

A. No.

Q. Okay. What were the circumstances that you didn't have a deed of trust?

A. Land was granted to me by my father or it was going to be granted by mother and father, but they didn't grant it because they wanted to take certain deductions on whatever they were spending on the house -- on the property, in this case land.

RR 1; p.208, ll. 6-12.

Q. (By Mr. Nichols) All right. If you want the tax write-off on a piece of property or an operation, isn't it -- isn't it in your best interest to keep it in your name?

A. Sure.

RR 1; p. 210, ll.18-22.

**Testimony of Sherry McNutt**

Q. (By Mr. Nichols) All right. Looking at the demonstrative aid, do you see pastures 7, 8, 9, 10, 11, 12, 13, and 14?

A. Yes, sir.

Q. All right. Did you have a conversation with your dad about you paying the taxes on that property?

A. Yes.

Q. All right, and tell the lady and the gentlemen of the jury what his response was.

A. He wanted the tax write-off.

Q. All right. So he paid the taxes. He got the tax write-off.

A. Yes, sir.

RR1; p. 238, ll.10-22.

Q. (By Mr. Nichols) Okay. What did you tell your father about paying the taxes on the house?

A. I would pay them.

Q. All right. What did he say?

A. He wanted them for a write-off.

RR 2; p. 21, ll. 21-25.

The evidence is undisputed that Bill McNutt delivered possession of the foreman's house to his daughter in 1983. Since that time, Bill McNutt continually referred to the foreman's house as his daughter's house. He even admitted as such in his attempts, through his attorney, to place restrictions on Appellee's use of the house. Moreover, there is evidence that Appellee made improvements to the foreman's house. Appellants describe all of this evidence as meager; yet it was sufficient to convince a judge and a jury that William H. McNutt gave his daughter the foreman's house in 1983. Further, two members of this panel believed there was enough evidence of a gift to remand this case for a new trial. Interestingly, most of the evidence cited by Appellants' to support their position that there was no gift comes from the first trial and has no bearing on this analysis.

Appellants argue that the evidence detailed above was not specific enough to support a finding that Appellee received a gift of ½ of the North Side of the ranch. Interestingly, the record is replete with objections from Appellants' counsel whenever anyone attempted to testify about a specific piece of property.

After reviewing all of this evidence, there is legally sufficient evidence that a reasonable fact finder could conclude that William H. McNutt gifted his daughter the foreman's house and an appropriate amount of land that encompassed half of the north side of his ranch. The evidence is also factually sufficient to support the jury's findings. The only evidence that there was not a gift of the foreman's house

14

was that William H. McNutt did not file a gift tax return and continued to pay taxes on the property at issue. Given the testimony that William H. McNutt wanted to continue to receive tax benefits from the property, a reasonable fact finder could have easily decided that this evidence did not negate a finding that William H. McNutt gave the foreman's house and an appropriate amount of land to his daughter.

## III. The Trial Court Did Not Err In Refusing To Grant A Directed Verdict Or A Judgment N.O.V.

### a. Standard of Review

A trial court may order a directed verdict in favor of a defendant when: (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *See Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S. W. 3d 74, 77 (Tex. 2000). A motion for judgment n.o.v. should be granted only if the evidence is legally insufficient to support the jury's findings or if a directed verdict would have been proper because a legal principle precludes recovery. TEX. R. CIV. P. 301; *see Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S. W. 2d 392, 394 (Tex. 1991).

A directed verdict is appropriate when reasonable minds can draw only one conclusion from the evidence. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623

15

(Tex.App.—Houston [1st Dist.] 1987, no writ). In evaluating a directed verdict, we determine if there was legally sufficient evidence that would support each of the elements of the cause of action. *M.J. Sheridan*, 731 S.W.2d at 623. If the Smiths introduced some evidence on each of the elements for design defect, the trial court erred in granting Aqua–Flo's motion for directed verdict. *Id.* at 624. In evaluating the evidence, we examine it in the light most favorable to the party against whom the verdict was rendered, and disregard all contrary evidence and inferences. *Qantel Bus. Sys., Inc. v. Custom Controls*, 761 S.W.2d 302, 303 (Tex.1988); *M.J. Sheridan*, 731 S.W.2d at 623.

A trial court may disregard a jury's findings and grant a motion for JNOV only when there is no evidence upon which the jury could have made its findings. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). When determining whether the trial court erred in granting a motion for JNOV, the appellate court must consider only the evidence and the reasonable inferences that support the jury's answers. *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). The record is reviewed in the light most favorable to the jury's finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to the finding. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). To uphold a JNOV, the appellate court must decide that no evidence supports the jury's findings. *Mancorp*, 802 S.W.2d at

16

227–28; *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 245 (Tex.App.—San Antonio 2001, rev. denied). *Richardson v. Wal–Mart Stores, Inc.,* 963 S.W.2d 162, 164 (Tex.App.—Texarkana 1998, no pet.). The JNOV should be reversed when there is more than a scintilla of competent evidence to support the jury's finding. *Aquila Southwest Pipeline, Inc.,* 48 S.W.3d at 245.

In *City of Keller v. Wilson*, the Court discussed, both from the historical and legal perspective, the standard for review for each of the subject motions and decided that "the standards for taking any case from the jury should be the same…" 168 S.W.3d at 811. Whether the inclusive or exclusive standard, if properly applied, is used to decide whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review, the resulting decision should be the same. *Id.*

**b.** **The Evidence Was Legally Sufficient To Withstand The Motion For Directed Verdict and Motion for Judgment Notwithstanding the Verdict.**

In the first appeal, this Court of Appeals upheld the trial court's decision that Mr. William H. McNutt had orally gifted the house, previously known as the foreman's house, situated in the specifically identified and completely segregated part of the McNutt ranch, referred to as the "North side" and remanded to have the

trier of fact determine "an appropriate amount of acreage necessary for the full use and enjoyment of the house…"

The 13th Amended Petition, which was the live pleading at trial and admitted into evidence, asserted that the gift of the house included 5 acres surrounding the house and parcel 9, consisting of approximately 700 acres. The trial court prevented direct testimony as to any particular parcel of real estate in the North side, and limited the testimony to an oral gift of the house and an appropriate amount of acreage for the full use and enjoyment of the house. As detailed above, there was legally and factually sufficient evidence to support the jury's verdict. The trial court correctly denied the motion for directed verdict and motion for judgment notwithstanding the verdict.

## IV.    The Jury Charge Submitted To The Jury Was Correct.

The standard of review for error in the court's charge is abuse of discretion. *Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). In order for the appellate court to reverse on a jury charge error, the appellant must show harmful error. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749–50 (Tex.1980); *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 232 (Tex.App.—San Antonio 2001, rev. denied). Error in the jury charge is reversible only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on

appeal. *See* TEX. R. APP. P. 44.1(a); *Timberwalk Apts., Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex.1998). To determine whether an alleged error in the charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *See Id* at 756; *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986). An improper jury charge requires reversal only when, under the circumstances of the case, including the charge as a whole and the statements and arguments of counsel, the error was calculated to cause and probably did cause the rendition of an improper judgment. *Berry Prop. Mgmt., Inc. v. Bliskey,* 850 S.W.2d 644, 661 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

Appellants' argument is essentially that its trial strategy backfired on them. Appellants' repeatedly objected to any testimony as to a specific parcel of land that accompanied the gift of the foreman's house to Appellant in 1983, and the trial court sustained these objections. RR 1; p. 194, l.8 – p. 201, l.2; p.262, l.13 – p.275, l. 18. Appellants now complain that there is no evidence to support the jury's finding that "½ of the North Side" of the ranch was an appropriate amount of acreage for the full use and enjoyment of the house. Appellee testified at trial regarding what was necessary to fully enjoy the foreman's house. Appellants' proposed question is tantamount to including a specific amount of damages in a damages question.

The controlling issue on retrial, consistent with the "law of the case" principle was submitted to the jury in two questions with the proper legal standard. The first question, the gift to Sherry McNutt of the "foreman's" house was again determined by the fact finder in the affirmative. It was not submitted as an oral gift of the entire 2000 acre/North side issue, in accord with the "law of the case" principle. The second question was submitted to the jury in the specific language that this Court remanded for determination and it was done within the limitation of "no oral gift of the entire 2000 acre/North side" context. Question 2 was decided by the fact finder from the testimony relevant to the amount of acres, if any, is an appropriate amount of acreage for the full use and enjoyment of the house. The charge submitted is verbatim from this Court's opinion.

Question 2 permitted the jury to only determine, by clear and convincing evidence, an appropriate amount of acreage for the full use and enjoyment of the house. This Court specifically remanded the case for that same identical determination. Appellee understands that Judge Loving's statements at the pre-trial hearing as to a "presumption" were not submitted nor binding on the jury, but this particular "foreman's" house already determined to have been gifted to Sherry McNutt has always been situated on the specifically identifiable North side. In the context of the house gift, excluding the entire 2,000 acre/North side and following the "law of the case", Appellee presented without objection, and with the wavier

20

and acquiescence of Appellant's trial counsel, during various cross-examination, testimony relevant to the twenty year plus history of the possession of the house and property without limitation or restriction by William H. McNutt for Sherry McNutt's full use and enjoyment of the house.

Moreover, it was the Appellants that objected to any parcel within the entire 2000 acre/North side, being identified, and they should not be allowed to benefit from the limitations they urged.

The trial court submitted its charge based on the pleadings, the oral gift exception to the statute of frauds as to the "foreman's" house and the equitable exception concerning the developed testimony on the appropriate acreage for the full use and enjoyment of the "foreman's" house.

The proposed submission by the Ranch entities is not substantially correct. First, the proposed charge does not contain a date reference. Second, the proposed charge is a comment on the evidence. Third, the proposed charge confuses the initial gift of property as to the entire 2000 acres/North side, and the specific remand instruction concerning the appropriate amount of acreage for the full use and enjoyment of the "foreman's" house. Fourth, the proposed charge sponsored a metes and bounds description on the North side, that would have been contrary to the completed oral gift of the "foreman's" house and the acres to have full use and

21

enjoyment thereof. Lastly, the proposed charge called for multi-issue resolution that would leave any answer therein from being directly traced.

The trial court submitted the charge that reflected all the admitted evidence, whether from direct examination or cross-examination, tried by consent, or waived, but before the jury and the "law of the case".

Sherry McNutt did not relitigate the 1983 oral gift of the entire 2,000 acre/North side issue. Sherry McNutt tried only the very specific fact to be determined on remand, and not determined in the first trial. If appellant's position is correct, the Ranch entities might have prevailed by for a pre-trial disposition as a matter of law. The Ranch entities allowed the fact issues, raised by the testimony, to be submitted to the jury.

Appellee's live pleading, provided notice of the 1983 oral gift of the "foreman's" house with the surrounding five (5) acres and parcel A that Appellee estimates as being 700 acres and in the prayer for a relief that included general relief and specific as Appellee may show herself justly entitled.

The pleadings at trial allowed for the testimony admitted to be submitted to the jury in the form of Question 1 and Question 2 that are within the bounds of the "law of the case" and the specific fact remanded.

22

**V.  Appellants failed to properly present evidence of juror misconduct that would be sufficient to set aside the jury's verdict.**

In their fifth issue, the Appellants argue that juror misconduct resulted in an improper verdict. In support of their Amended Motion for New Trial, Appellants submitted the affidavit of two of the jurors, Daniel Meyer and Dale Gipson, alleging that two of the other jurors injected facts into the deliberations that were outside the evidence.

To warrant a new trial for jury misconduct, the movant must establish (1) that the misconduct occurred, (2) it was material, and (3) probably caused injury." *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex.2000).  Jurors are prohibited from testifying about matters and statements occurring during deliberations. Tex. R. Civ. P. 327(b); *Id.* at 370.  Proof of a juror's failure to disclose bias must come from some source other than a fellow juror's testimony about deliberations." *Id.*

The evidence presented by Appellants relates to statements allegedly made by jurors during deliberations and is not provided from a source outside the jury. As such, the affidavits presented by Appellants are inadmissible to show jury misconduct.  Accordingly, this Court should overrule Appellants' Issue Number 5.

## CONCLUSION

Three fact finders have determined that William H. McNutt in 1983 gave his daughter, Sherry McNutt, the foreman's house.  On remand, Sherry McNutt

presented evidence of her own ranching operations, cattle and sheep and goats, later Sherry McNutt and William McNutt, together and separately, ventured into the exotic market. Sherry McNutt managed William H. McNutt's exotics on the "South" side of the ranch until 2001, when William H. McNutt gave all the wild game to Mrs. Johnie Beth McNutt and Sherry McNutt including the income from hunting and the sale of exotics. Never during William H. McNutt's lifetime did he undertake an act inconsistent with the completed gift in 1983, no limitation in the use of the "North" side as exercised by Sherry McNutt. Sherry McNutt committed her life to the 1983 gift by William H. McNutt, she believed and relied upon the word of her dad, as a true Texan, a man's word is his bond, plus William H. McNutt was her trusted and confidential companion, to undo William H. McNutt's word is a detriment to Sherry McNutt.

## PRAYER

Appellee, Sherry McNutt, prays that the Court will affirm the judgment of the trial court, and for such further relief to which she may be entitled.

Respectfully submitted,


  /s/ Gene Garcia
GENE GARCIA
State Bar No. 07634500
809 S. Port Ave.
Corpus Christi, Texas 78405
(361) 883-8651
(361) 288-8392 – facsimile
email: gene@garciatexaslaw.com

**ATTORNEYS FOR APPELLEE**

**<u>CERTIFICATE OF COMPLIANCE</u>**

In accordance with Texas Rule of Appellate Procedure 9.4, I certify that the foregoing computer-generated brief contains 5,490 words.


  /s/ Gene Garcia

25

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument was delivered to all counsel of record by electronic service on August 19, 2015:

Craig White
Law Office of Craig L. White
111 W. Olmos Dr.
San Antonio, Texas 78212
210-829-7183
craigwhite@111westolmos.com

Jeff Small
Law Office of Jeff Small
12451 Starcrest, Suite 100
San Antonio, Texas 78216
210-496-0611
jdslaw@satx.rr.com


  /s/ Gene Garcia