Alton L. RICHARDSON, Appellant,

v.

James LANEY and Johnny
Richardson, Appellees.

No. 06–95–00023–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 5, 1995.

Decided Nov. 9, 1995.

**490**

Robert D. Bennett, Griffith & Bennett, Gilmer, for Appellant.

Lance W. Hinson, Mount Pleasant, Deborah J. Race, Tyler, for Appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

This is an appeal from a judgment in a will contest. The trial court held that Alton Richardson, who was named joint independent executor in O.W. Richardson's will, had a conflict of interest with the estate. The court also held that a residence and two acres of land, a $35,000.00 certificate of deposit, and other personal property belonging to O.W. Richardson, although purportedly transferred to Alton Richardson and his half-sister, Juaquita Fox, by O.W. Richardson before his death, belonged to the estate rather than to Alton and Juaquita.

The court's judgment was based on jury findings that Alton Richardson had a conflict of interest with the estate, and that O.W. Richardson did not intend to make a gift of the real estate and the certificate of deposit to Alton and Juaquita.

Alton Richardson contends that the trial court erred in submitting the jury question on conflict of interest because there was no evidence to support it, and that the other jury findings are supported by no or insufficient evidence.

Alton is the son of O.W. and Helen Richardson. Helen Richardson was killed in an automobile accident in 1946, and O.W. thereafter married Maggie Richardson in 1949. Maggie Richardson had two children by a prior marriage, one of whom was James Laney. O.W. and Maggie Richardson had a daughter, Juaquita, and a son, Johnny. Maggie Richardson died, and O.W. Richardson again remarried. His third wife is not a party to this appeal.

On November 12, 1987, O.W. Richardson executed a will. The will devised one-fifth of O.W.'s estate to Johnny Richardson (son by second marriage); one-fifth to Alton Richardson (appellant, son by first marriage); one-fifth to Juaquita Richardson Fox (daughter by second marriage); one-tenth to James Laney (step-son from second marriage); and

one-tenth each to Bryn Keith Reid and Michael Reid (step-grandsons from second marriage). The will failed to dispose of the remaining one-tenth, but no party raised this as an issue. The trial court noted this discrepancy and stated that the final one-tenth would be disposed of in accordance with the laws of descent and distribution. The will also appointed Alton and Juaquita as independent executor and executrix.

O.W. Richardson became ill in 1991 and received chemotherapy treatments at a hospital. In September 1991, he executed a warranty deed conveying his interest in his home and acreage to Alton and Juaquita. On December 29, 1991, he purchased a certificate of deposit, payable to himself as trustee for Alton and Juaquita, in the amount of $35,000.00. O.W. Richardson died on April 11, 1992.

On December 18, 1992, Johnny Richardson and James Laney filed an application to probate a copy of O.W. Richardson's will, alleging that the original was lost or misplaced. On December 29, 1992, Alton Richardson filed an opposition and presented to the court what he claimed to be the original of the will.

Johnny Richardson and James Laney asked in their pleadings that they be named as co-executors of the will in place of Alton Richardson and Juaquita Fox.

The jury answered the following questions:

### Question No. 1

A conflict of interest is shown where a person uses property and money of an estate as if it was their own without keeping records for accounting to the Estate for its use by them.

Do you find that there is a conflict of interest between the interests of Alton Richardson and the interests of the Estate of O.W. Richardson, Deceased?

[ANSWER]   Yes.

. . . .

### Question No. 3

Do you find that O.W. Richardson, Deceased, did not intend to make a gift of the real estate and home to Alton Richardson and Juaquita Richardson Fox?

[ANSWER]   He did not intend to make a gift.

### Question No. 4

Do you find that O.W. Richardson, Deceased, did not intend to make a gift of the Certificate of Deposit to Alton Richardson and Juaquita Richardson Fox?

[ANSWER]   He did not intend to make a gift.

▮▮▮   Alton Richardson has raised both legal and factual sufficiency of the evidence challenges. In reviewing a legal sufficiency point, we consider only the evidence and inferences, viewed in their most favorable light, that tend to support the jury finding and disregard all contrary evidence and inferences. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If there is any probative evidence supporting the finding, we must overrule the point and uphold the finding. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

▮▮▮   In reviewing a factual sufficiency point, we consider and weigh all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). We will set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We cannot substitute our opinion for that of the trier of fact, even if we would reach a different conclusion. *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

▮▮▮   We first consider Alton's contention that there is legally and factually insufficient evidence to support the jury's finding of a conflict of interest between his interest and the interest of the estate. The court's instruction informed the jury that a conflict of interest exists where a person uses property and money of an estate as if it were his or her own without keeping records for accounting to the estate for their use.

In the light most favorable to the jury's finding, and ignoring all evidence to the contrary, the record shows the following evidence on this issue: At his father's death, Alton took and used for two years a pickup truck belonging to the estate without accounting for or compensating the estate for the use or for the wear and tear on the vehicle; closed an account of O.W. Richardson in the approximate amount of $938.00 and deposited the money in his personal account without informing the other heirs at the time of the transaction and without refunding the money to the estate; deposited a refund check from an attorney in the amount of $75.00, intended for the estate, into his own account and never paid it to the estate; wrote a check to the Internal Revenue Service for $120.00 drawn on the estate's account to pay his personal taxes and never reimbursed the estate; charged various utility bills for the house to the estate, even though he claimed that the house had been conveyed to him; and removed various items of personal property from the house, including a letter desk, a watch, clothing, a .32 caliber pistol, a .308 caliber rifle, and a telephone.

Alton testified that he had kept records on transactions involving the home and other property belonging to the estate, but he did not introduce the records in evidence. He contends that Johnny Richardson and James Laney had the burden to prove that he did not keep records of his personal use of estate property and that they failed to produce evidence to that effect. We disagree. Their burden was to show that Alton did not *account to the estate* for such funds and property, i.e., that he did not reimburse the estate for the funds or return the property. We do not construe the jury instruction so narrowly that it would allow Alton to defeat a conflict of interest claim simply by keeping records of his wrongs but not recompensing them. It is true that the jury instruction, inartfully drawn but not objected to, told the jury that a conflict of interest was using estate property or money "without keeping records for *accounting to the Estate* " (emphasis added), but we believe a reasonable meaning of that instruction is that the person using the money or property must make an accounting to the estate for such use, i.e., must reimburse the estate or return the property. The words in the instruction, "accounting to the Estate," seem to confirm that meaning.

We find sufficient evidence in the record to support the jury's finding of a conflict of interest.

■ Alton next argues that the evidence was both legally and factually insufficient to support the jury's finding that his father did not intend to make a gift of the real estate and home to him and Juaquita.

O.W. Richardson conveyed his home by deed to Alton and Juaquita on September 17, 1991. Alton kept the deed and did not file it for record until April 21, 1992, ten days after his father's death.

■ When, as here, property is deeded from a parent to a child or children, it is presumed that a gift was intended. *Kyles v. Kyles,* 832 S.W.2d 194, 197 (Tex.App.—Beaumont 1992, no writ). This presumption is rebuttable, but the person seeking to rebut the presumption must prove a lack of donative intent by clear and convincing evidence at the trial court level. *Id.* (citing *Somer v. Bogart,* 749 S.W.2d 202, 204 (Tex.App.—Dallas), *writ denied per curiam,* 762 S.W.2d 577 (Tex.1988)). The clear and convincing standard does not alter the standard of review to be applied at the appellate court level for sufficiency of the evidence challenges. *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 842 (Tex.App.—Fort Worth 1995, no writ); *In re A.D.E.,* 880 S.W.2d 241, 245 (Tex.App.—Corpus Christi 1994, no writ); *Oadra v. Stegall,* 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ) (citing *D.O. v. Texas Dep't of Human Services,* 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ)); *see also State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977), *cert. denied,* 435 U.S. 929, 98 S.Ct. 1499, 55 L.Ed.2d 525 (1978), and *Meadows v. Green,* 524 S.W.2d 509 (Tex.1975). The requirement of clear and convincing evidence is merely another way of stating that a cause of action must be supported by factually sufficient evidence.

The warranty deed was introduced at trial by James Laney and Johnny Richardson. It

purported to convey title to the real estate in fee simple to Alton and Juaquita. Thus, the presumption that the conveyance was a gift arose.

There is, however, the following evidence tending to rebut the presumption: O.W. Richardson did not relinquish possession, but continued to live in and control the real property until his death in April 1992; there is circumstantial evidence that O.W. Richardson wanted to put the home in Alton's or Juaquita's "name" to avoid losing Medicare benefits; Alton retained possession of the deed executed in September 1991 and did not record it until April 1992, several days after his father's death; and Alton stated in his pleadings filed in opposition to the suit by James Laney and Johnny Richardson that at the time of his death O.W. Richardson owned the real estate in question. Pleading that the property belonged to the estate is contrary to Alton's claim that the real estate was given to him and Juaquita in 1991, and it gives rise to an inference that Alton was aware that the conveyance of the property to him and Juaquita was not intended as a gift. Alton contends that the wording of his pleading was merely a formality to comply with the Probate Code, but the jury could have concluded that such an admission shows an awareness by Alton that the property was not, in fact, given to him by conveyance from his father.

We conclude that there is some evidence to support the jury's finding that O.W. Richardson did not intend to make a gift of the real estate to Alton and Juaquita, and that it is factually sufficient to support the finding. The evidence in its entirety is not so weak as to be clearly insufficient, nor is the jury's finding so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

This raises another question, however. If the deed to Alton and Juaquita was not a gift, how did the property conveyed thereby become the property of the estate, as ruled by the trial court? Ordinarily, if a deed is not a gift, it is a sale, and the property would pass to Alton and Juaquita as purchasers. But, although there are no findings on the issue, the court's judgment can be upheld, as

to the real estate, by construing the deed as creating a resulting trust.

Where the grantor does not receive any consideration for the transfer of real property and did not intend to make a gift, a resulting trust for the grantor's benefit arises even though the agreement is not in writing as required by the Texas Trust Act. When an express trust fails, the law applies a resulting trust with the beneficial title vested in the grantor, or in case of his death, his estate and devisees. *Brelsford v. Scheltz*, 564 S.W.2d 404 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Murphy v. Johnson*, 439 S.W.2d 440 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ). James Laney and Johnny Richardson pleaded for the imposition of a trust. There is circumstantial evidence that O.W. Richardson received no consideration for the conveyance to Alton and Juaquita. Indeed, the brief for James Laney and Johnny Richardson states that no consideration was paid, and that statement is not challenged here. Moreover, after O.W. Richardson's death, Alton pleaded that the property purportedly conveyed by the deed belonged to the estate, a position inconsistent with a pure sale. Extrinsic evidence is admissible to show that consideration, although recited in the deed, was not paid.

The application of a resulting trust is an equitable remedy. In *Kostelnik v. Roberts*, 680 S.W.2d 532 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), it was argued that transfers of property to create eligibility for Medicaid benefits made the transferring party ineligible to exercise a constructive trust because of the lack of clean hands. The court held, however, that such a matter was in the sound discretion of the trial court and that it was not an abuse of discretion to give equitable relief when the other party to the transaction had not been harmed. *Kostelnik v. Roberts, supra* (citing *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960), and *Hand v. State*, 335 S.W.2d 410 (Tex.Civ.App.—Houston), *writ ref'd n.r.e. per curiam*, 160 Tex. 416, 337 S.W.2d 798 (1960)).

Alton Richardson further contends that there was no evidence or insufficient

evidence to support the jury's finding that O.W. Richardson did not intend to make a gift of the certificate of deposit to him and Juaquita in the amount of $35,000.00.

Because the certificate of deposit tends to show that O.W. Richardson conveyed his interest in the $35,000.00 to two of his children, Alton and Juaquita, a rebuttable presumption arises that the act was intended as a gift. See Kyles v. Kyles, 832 S.W.2d at 197.

The record includes three separate certificates of deposit, each of which purports to show interest in the same $35,000.00 belonging to O.W. Richardson:

(1) Certificate of Deposit No. 26618, executed on December 29, 1990, was to mature on December 29, 1991. The certificate is in the name of "O.W. Richardson Trustee for A.L. Richardson and Juaquiea (sic) Fox" and is in the amount of $35,000.00.

(2) Certificate of Deposit No. 27438, executed on December 29, 1990, was to mature on December 29, 1991. This certificate set up a joint account with right of survivorship in the names of "Alton L. Richardson and Juaquita Fox" and is in the amount of $35,000.00. There is no evidence showing which of these certificates of deposit was executed first, nor is there any explanation why O.W. Richardson appears as trustee on one but not on the other. Alton testified, however, that he took the certificate of deposit on which O.W. Richardson appeared as trustee to the bank and had it changed to eliminate O.W. Richardson as trustee and put it in his and Juaquita's names. There is no indication that O.W. Richardson was aware of this change.

(3) Certificate of Deposit No. 27689 was executed on December 29, 1991, presumably on the expiration of the earlier certificate of deposit. It is also set up as a joint account with right of survivorship in Alton Richardson and Juaquita Fox. Its maturity date was December 29, 1992. A typewritten notation on this certificate of deposit indicates that, in April 1992, a withdrawal of $4,809.00 was made from the certificate of deposit to cover funeral expenses for O.W. Richardson. Since this expense was legitimately one for the estate of O.W. Richardson, the payment of the debt from this certificate of deposit raises an inference that the parties considered it to be an asset of the estate and not the property of Alton and Juaquita. There was testimony that O.W. Richardson continued to receive all of the interest from this certificate of deposit until his death. From this, the jury could have inferred that O.W. Richardson did not intend to make a gift of the certificate of deposit to Alton and Juaquita.

There was also testimony that the house and the certificate of deposit were the only major assets belonging to O.W. Richardson before his death, and only about $5,000.00 worth of other property existed. From that, the jury could have inferred that O.W. Richardson did not intend to give away almost all of his assets, especially since he went into such detail as to how the assets were to be divided at the time of his death.

In a response to a question in an interrogatory, introduced into evidence at trial, Juaquita Fox indicated that O.W. Richardson never gave her any oral instruction, nor did he state his desires regarding the certificate of deposit, but in conflicting testimony by deposition she stated that he had at one time indicated that he wanted her to have the certificate of deposit and Alton the house, or, she said, vice versa. She indicated that this was at a time "when the car was taken," referring to when her father had to make good on a $17,000.00 note to finance a car purchase he had guaranteed for Johnny Richardson. Johnny Richardson testified that he repaid his father in full for the amount he had guaranteed. The resolution of this conflict in testimony was for the jury.

We conclude that there is some evidence that O.W. Richardson did not intend to make a gift of the $35,000.00 certificate of deposit to Alton and Juaquita, to the exclusion of his other children. Moreover, the evidence is factually sufficient to support the jury's finding in that regard.

For the reasons stated, the judgment of the trial court is affirmed.