

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00030-CV

_____

LETA YORK, Appellant

V.

TODD BOATMAN, Appellee

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV 41400

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# O P I N I O N

Leta York (York) filed suit in Hopkins County, Texas, seeking to have a 1995 deed conveying real property from her to her daughter, Gwendolyn Boatman (Gwendolyn), declared void; in the alternative, she sought to impose a constructive trust on the 153.185 acres conveyed in the deed. The trial court held that the deed was valid and that Todd Boatman (Todd), Gwendolyn's son and sole beneficiary, was the fee simple owner of the 153.185 acres, subject to a four-acre life estate in favor of York. On appeal, York asserts (1) that the 1995 deed is void and/or invalid as a gift, (2) that the evidence is insufficient to support the trial court's findings of fact numbered 3, 4, 5, 6, and 8, and (3) that the evidence is insufficient to prove that Gwendolyn repudiated the constructive trust created by the 1995 deed.

We find (1) that the 1995 deed was a valid gift, (2) that there is sufficient evidence to support the trial court's findings of fact, and (3) that no constructive trust existed.

Accordingly, we affirm the trial court's judgment.

## I. Factual and Procedural Background

In 1967, W.L. Smith and Donnie Smith conveyed a life estate in four acres to their daughter, York, and her husband, Henry York (Henry), with the remainder in fee simple to the Yorks' only daughter, Gwendolyn. In 1985, after both of the Smiths passed away, York and her sister, as the Smiths' sole heirs, partitioned the Smiths' real property, with York being conveyed a fee simple interest in 153.185 acres, including the four acres subject to the life estate from the 1967 deed.

2

By general warranty deed dated August 10, 1995, York conveyed the 153.185 acres to Gwendolyn "as her separate property." The deed stated that it was "[s]ubject to all outstanding [r]eservations, [r]estrictions[,] and [r]ights of [w]ay of record . . . ." York's husband, Henry, was not a party to the 1995 deed and died shortly after the 1995 deed was executed.

In November 2003, Gwendolyn executed a gift deed conveying the 153.185 acres back to York, but as per Gwendolyn's instructions, the gift deed was held by her attorney, Jay Garrett, and was never delivered or recorded. In a letter dated December 6, 2004, York's attorney, Lanny Ramsay, demanded that Garrett release and forward the gift deed to him. After learning of York's demand, Gwendolyn requested, by letter, that Garrett return the deed to her, and when he refused to do so, she filed a rescission of the gift deed in the deed records of Hopkins County. In January 2005, Garrett submitted the gift deed into the registry of the court and filed an interpleader action, naming York and Gwendolyn as defendants. Four months later, Gwendolyn filed a pro se answer, requesting that the gift deed be returned to her. In March 2006, the trial court dismissed the interpleader for lack of prosecution and about five months later, ordered that the gift deed be released to Gwendolyn.

Gwendolyn died on April 22, 2012, leaving a Will naming her son, Todd, as the sole beneficiary of her estate. The Will was admitted to probate on June 12, 2012. In July 2012, by special warranty deed, Gwendolyn's estate conveyed the 153.185 acres to Todd.

On January 30, 2013, York, claiming to be the rightful owner of the 153.185 acres, filed suit against Todd to have the 1995 deed declared void, or in the alternative, to impose a

3

constructive trust on the 153.185 acres conveyed in the deed.[1]  The trial court held that the 1995

deed was valid and that Todd was the fee simple owner of the 153.185 acres, subject to a four-acre

life estate in favor of York.[2]

II.      Analysis

A.       York's First Point of Error—Whether the 1995 Deed is Invalid

1.       York's First Argument—The 1995 Deed Was Void Because it Was Not
a Gift of a Present Interest

York first argues that the 1995 deed was void and/or invalid because it was not a gift "in

praesenti," a gift of a present interest, as it failed to exclude or reserve the four-acre life estate from

the 1967 deed or the homestead interest of Henry.[3]  Nevertheless, a gift by deed does not require

proof that the gift was *in praesenti*.  When conveyed by deed, an estate in realty may be made to

commence in the future.  *See Woodworth v. Cortez*, 660 S.W.2d 561 (Tex. App.—San Antonio

1983, writ ref'd n.r.e.) ("A gift may generally not be made to take effect in the future since a mere

---

[1]In her petition, York also sought a permanent injunction as well as damages for slander of title and adverse possession, but we do not address these claims because they were not raised or implicated on appeal.  While there was testimony indicating that the parties may have intended for York to retain a four-acre life estate, we note that York failed to argue mistake or mutual mistake.

[2]The trial court held that York was "entitled to equitable relief awarding her a life estate in approximately 4 acres of land as set forth in the final judgment."  As Todd does not appeal from this award, we offer no opinion regarding its propriety.

[3]York appears to argue that the deed is void for failure of description, as the deed "does not correctly describe the interest conveyed."  The adequacy of a property description in any instrument transferring an interest in real property, is a question of law, and in order to satisfy the Statute of Frauds, a deed "'must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty.'"  *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (per curiam) (quoting *Morrow v. Showell*, 477 S.W.2d 538, 539 (Tex. 1972)); *Templeton v. Dreiss*, 961 S.W.2d 645, 658 (Tex. App.—San Antonio 1998, pet. denied).  Here, the 1995 deed contains a metes and bounds description sufficient to identify the size, shape, and boundaries of the property purportedly being conveyed.  *See Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972).  Therefore, the deed satisfies the Statute of Frauds and is not void.  *See Long Trusts*, 222 S.W.3d at 416; *Morrow*, 477 S.W.2d at 539.

promise to give is unenforceable without consideration. However, by virtue of statutory authority an estate in realty may be made to commence in futuro by deed." (citations omitted)); *see also Davis v. Zeanon*, 111 S.W.2d 772, 773 (Tex. Civ. App.—Waco 1937, writ ref'd) ("At common law, an estate in remainder, expectant on the death of the grantor, could not be created, but in this state, by virtue of a special statutory provision, an estate in land may be created by deed to commence in futuro.").

Yet, even if transfer of a present interest were required, there is no indication in the 1995 deed that York did not immediately convey all of her present rights and title in the 153.185 acres or that any part of the conveyance was to take place in the future. The 1995 deed purports to convey York's rights and title in the 153.185 acres to Gwendolyn. At the time of the 1995 deed, York owned the 153.185 acres subject to the four-acre life estate and homestead rights of Henry. Thus, on its face, the deed purports to grant all of York's interest in the property to Gwendolyn.

York argues, however, that that conveyance is invalid because the deed fails to reserve Henry's rights in the property. York reasons that, because she had no authority to convey Henry's rights, the 1995 deed is invalid. Nevertheless, "[o]ne spouse's conveyance of her separate property family homestead, without the joinder of the other spouse, is not void as to the conveying spouse. It is, however, inoperative against the continuing homestead claim of the nonjoining spouse." *Geldard v. Watson*, 214 S.W.3d 202, 207 (Tex. App.—Texarkana 2007, no pet.) (citation omitted). Moreover, a homestead right "is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its

5

homestead character." *Laster v. First Huntsville Props., Co.*, 826 S.W.2d 125, 129 (Tex. 1991).

And,

> [a]lthough the homestead estate is not identical to a life estate because one's homestead rights can be lost through abandonment, "it may be said that the homestead laws have the effect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property."

*Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 686 (1983)). Accordingly, even though the deed does not specifically reserve Henry's homestead and life estate rights, the conveyance was made subject to those rights as a matter of law, and the failure of the deed to specifically reserve those rights does not render it void as to York.[4] *See id.*; *see also Davis*, 111 S.W.2d at 772.

### 2. York's Second Argument—The 1995 Deed is Invalid Because the Evidence is Insufficient to Establish that the 1995 Deed Was a Gift

The trial court's conclusion that Todd Boatman was the fee simple owner of the 153.185 acres was based on an implied finding that the 1995 deed was a gift from York to Gwendolyn.[5] In her second point of error, York argues that the 1995 deed was not a valid gift of the property because she lacked the requisite donative intent and because no actual delivery and acceptance occurred. Specifically, she argues that she and Gwendolyn agreed to transfer the property to

---

[4]Rather, it was merely inoperative as to Henry's homestead interest and life estate until he passed away shortly after the deed's execution. *See Laster*, 826 S.W.2d at 129. Moreover, Henry's homestead interest and life estate were extinguished when he died shortly after the deed was executed, and therefore, they were not issues at the time of trial. *See id.*

[5]At the time of the 1995 deed, Gwendolyn was married to Gene Boatman, and she was still married to him at the time of her death. Therefore, if the 1995 deed was not a gift, the property conveyed by the deed would be community property, and the trial court's holding would be in error. *See* TEX. FAM. CODE ANN. §§ 3.001–.002 (West 2006).

6

Gwendolyn in order to protect it from seizure by the government to satisfy Henry's nursing home costs and then transfer it back to York upon Henry's death.

A gift of realty can be made either by deed, as is alleged in this case, or by parol gift. *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.). The elements of a valid gift by deed are: (1) donative intent, (2) delivery of the property, and (3) acceptance of the property. *Id.* at 296. The owner must release all dominion and control over the gifted property. *Id.* Generally, the party claiming the gift has the burden of establishing the elements of gift, but because the 1995 deed purports to convey the property at issue from York to Gwendolyn it is presumed that York intended the conveyance to be a gift. *See id.*; *Richardson v. Laney*, 911 S.W.2d 489, 492 (Tex. App.—Texarkana 1995, no writ) (citing *Kyles v. Kyles*, 832 S.W.2d 194, 197 (Tex. App.—Beaumont 1992, no writ)). To rebut this presumption, York had to "prove a lack of donative intent by clear and convincing evidence at the trial court level." *Richardson*, 911 S.W.2d at 492. Moreover, the requirement of clear and convincing evidence "does not alter the standard of review to be applied at the appellate court level for sufficiency of the evidence challenges." *Id.* Thus, notwithstanding the clear and convincing evidence standard, the trial court's findings must be supported by factually sufficient evidence. *Id.*

"When we review a finding for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Edwards v. Mid-Cont'l Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied) (citing *Francis v. Dow Chem. Co.*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). The trial

7

court, being the sole judge of witness credibility and the weight to be given to the evidence, is free to believe one witness and disbelieve others while resolving conflicts in the evidence and inconsistencies in the testimony of witnesses. *Gnerer v. Johnson*, 227 S.W.3d 385, 390 (Tex. App.—Texarkana 2007, no pet.); *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.— Houston [1st Dist.] 1992, writ denied). In our review, we must credit evidence favorable to the finding if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not do so. *Hampden Corp. v. Remark, Inc.*, No. 05-13-00529-CV, 2014 WL 2921655, at *6 (Tex. App.—Dallas Jun. 25, 2014, pet. denied) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

York attempted to rebut the presumption that the 1995 deed was a gift. She testified that, at the time she deeded the property to Gwendolyn, her husband was very ill, she relied on Gwendolyn a great deal, and she executed the deed, on her daughter's advice, in order to protect the property from the government should Henry need to be put in a nursing home.[6] There is an undated note in Gwendolyn's handwriting stating, in pertinent part,

> Deed over to Gwen and maintain life estate on house and 1 acre. Leta can live on it as long as Leta lives. Can have a tax freeze. Johnny Ramey said not do this because nursing home can take an [amount] to maintain living there for their part of money.

---

[6]Specifically, at trial, York testified to an alleged oral agreement between Gwendolyn and her regarding transfer of the property in question. York stated:

> Well, my husband was in -- he was critically ill. And she said if I had to put him in the nursing home, if I didn't have the money every month to pay the nursing home, the government would take my land. And she said the thing to do is get it out of your name and put it in my name and then when something happens to Henry, my husband, she said we can put it back in your name.

While Gwendolyn's husband, Gene, and one of her sons, Toby Boatman, both testified for York and corroborated her claims regarding the oral agreement, the trial court specifically found that their testimony was "not credible."

8

York claimed that the deed was executed with the mutual agreement that Gwendolyn would deed the property back to her upon demand. Several other notes, handwritten by Gwendolyn in October 2003, indicate that she was concerned about transferring the property back to York. York also pointed out (1) that she continued to live on the property after the 1995 deed through the time of trial, (2) that the property was listed as her homestead, (3) that she paid the taxes on the property through 2010, (4) that she collected rent from a rent house on the property, and (5) that she had cattle on the property until 2007.

However, factually sufficient evidence supports the trial court's implied determination that the 1995 deed was indeed a gift. In her deposition, York testified that, shortly after Henry died in 1995, she demanded the property back, but Gwendolyn refused. At trial, York said Gwendolyn never flatly refused to return the property, but instead kept putting it off to be done later. Todd denied that Gwendolyn ever agreed to deed the property back to York, but did testify that his mother told him that York had a right to live on the four-acre tract for the rest of her life. Gwendolyn accepted and recorded the 1995 deed in the deed records of Hopkins County, which establishes a prima facie case of delivery and acceptance. *See Jackson v. Hernandez*, 285 S.W.2d 184, 190–91 (Tex. 1955); *Rothrock v. Rothrock*, 104 S.W.3d 135, 138 (Tex. App.—Waco 2003, pet. denied).

The handwritten notes were written one month prior to the undelivered and unrecorded 2003 gift deed, which Gwendolyn later rescinded. York failed to prosecute a claim for the 2003 gift deed when it was placed into the registry of the court. Gwendolyn filed for a homestead exemption on the property in 2004 and lived on the property at various times after 1995, and though

9

she never demanded that York vacate the property, Gwendolyn's possession did not have to be exclusive in order for her possession to ripen into title. *See Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) ("While possession of the property is essential in order for the gift to ripen into title, it need not be exclusive possession. It need only be such possession as was contemplated by the donor to sufficiently protect the rights of the donee and such as was intended by both donor and donee evidencing an equal right of present enjoyment."). From 2005 until her death, Gwendolyn paid the taxes on the property.

After examining the evidence in its entirety, the evidence supporting the trial court's implied determination that the 1995 deed was a gift is not so weak as to be clearly insufficient, nor is it so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Accordingly, we overrule this point of error.

**B.      York's Second Point of Error—Whether the Evidence is Insufficient to Support the Trial Court's Findings of Fact**

In her second point of error, York contends that there is no evidence or insufficient evidence to support the trial court's findings of fact that (a) Henry died on August 22, 1995; (b) the date of the 1995 deed is August 8, 1995; and (c) Todd exercised all the rights of title to and ownership of the 153.185 acres since Gwendolyn's death through the date of trial.

Findings of fact entered in a case tried to the court, as here, "'are of the same force and dignity as a jury's answers to jury questions.'" *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (quoting *.39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991) (orig. proceeding)). The trial court's findings of fact are reviewable for legal and

10

factual sufficiency by the same standards that are applied in reviewing legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.). We will sustain such a challenge only when (1) there is a complete absence of evidence of a vital fact; (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a scintilla of evidence offered to prove a vital fact; or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Jelinek*, 328 S.W.3d at 532.

We conduct a de novo review of the trial court's conclusions of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law are not reviewable for factual sufficiency, we may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

Here, York contends that there is "no evidence or insufficient evidence" to support the following findings of fact:

11

3. Henry A. York died on August 22, 1995.

4. Shortly after the death of Henry A. York, Gwendolyn Boatman informed Plaintiff that she claimed ownership of the 153.185 acres by reason of the August 8, 1995[,] deed.

5. Gwendolyn Boatman exercised all the rights of title and ownership of the 153.185 acres since August 8, 1995[,] up until her death.

6. Defendant exercised all the rights of title and ownership of the 153.185 acres since the death of Gwendolyn Boatman through the date of trial.

. . . .

8. Again in 2004 and 2005 Gwendolyn Boatman informed the Plaintiff that she claimed ownership of the 153.185 acres of land by reason of the August 8, 1995[,] deed.

Initially, York argues that there is no evidence supporting finding of fact number three, that Henry York died on August 22, 1995, because York testified that Henry died on either August 20, 1995, or August 26, 1995, and hers is the only testimony in the record concerning the date of his death. However, in York's sworn "Assertion of Homestead Rights, Declaration Voiding Prior Conveyance, and Notice of Intention to Litigate Title," she stated that Henry died on August 22, 1995, and the assertion was admitted into the trial record as Boatman's exhibit five. Accordingly, the evidence is legally sufficient to support the trial court's finding of fact number three.

Findings of fact numbers four, five, and eight stated that the date of the 1995 deed is August 8, 1995, and York argues that there is no evidence to support that finding because the deed itself is clearly dated August 10, 1995. While we note that the deed is dated August 10, 1995, whether the deed was executed on August 8 or August 10 is an immaterial evidentiary fact in this

12

case and is not grounds for reversal or alteration of the judgment.[7] We overrule this point of error.[8] *See Andrews v. Key*, 13 S.W. 640, 641 (Tex. 1890); *Able v. Able*, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Vandever v. Goettee*, 678 S.W.2d 630, 635 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

York also contends that no evidence or insufficient evidence supports the trial court's finding of fact that Todd "exercised all the rights of title and ownership of the 153.185 acres since the death of Gwendolyn through the date of trial." York argues that the finding of fact is in error because the following actions "were not consistent" with the findings (a) that she lived on the property through the time of trial; (b) that Gwendolyn told Todd that York had the right to live on the four acres for the rest of her life; (c) that Todd admitted he had never asked York to vacate the property; and (d) that for three months after Gwendolyn's death, Todd collected rent from a rent house on the four-acre tract, but he stopped collecting the rent thereafter.

However, there is evidence that supports the trial court's finding. Todd testified, and the tax statements admitted at trial show, that he paid the taxes on the 153.185 acres from 2012, the year Gwendolyn died, through the time of trial. Just a few months after his mother's death, he built a barn on the property, made other improvements, and used the land for his cattle. From this

---

[7]An ultimate fact issue, which a trial court is required to enter in its requested written findings of fact following a bench trial, is one that is essential to the cause of action and has a direct effect on the judgment. *In re Marriage of Edwards*, 79 S.W.3d 88, 94 (Tex. App.—Texarkana 2002, no pet.). An evidentiary issue, which a trial court is not required to enter in its requested written findings of fact following a bench trial, is one the court may consider in deciding the controlling issue, but is not controlling in itself. *Id*.

[8]We note that, even if the specific date of the deed were a material issue, any error regarding the findings was invited error because in York's request for additional and amended findings of fact and conclusions of law, she, herself, requested more than a dozen findings of fact that listed August 8, 1995, as the date of the 1995 deed, and, therefore, she would be estopped from raising the issue on appeal. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (party may not complain on appeal of trial court's action when the party requested said action).

13

evidence, reasonable minds could differ about whether Todd exercised his rights of ownership from the date of Gwendolyn's death through the date of trial. *See Jelinek*, 328 S.W.3d at 532. Therefore, there is more than a scintilla of evidence to support the trial court's finding, and we overrule this point of error. *See id*.

**C.      York's Third Point of Error—Whether the Trial Court Erred in Holding that York's Constructive Trust Cause of Action Was Barred by the Statute of Limitations**

In her third point of error, York asserts that she is entitled to the return of the property under her constructive trust cause of action and that the trial court erred in finding it barred by the statute of limitations. First, York argues that, if the 1995 deed was valid and there was an agreement to deed the property back to York, then the deed created a constructive trust.[9] York then argues that, because a constructive trust existed, the statute of limitations could not begin to run until Gwendolyn repudiated the constructive trust and that, as there was insufficient evidence to prove said repudiation, the statute of limitations on her cause of action did not expire. Based on those assumptions, York concludes that she is entitled to the return of the property because

---

[9]York argues that a constructive trust was created in her point of error, but in the body of her brief, she cites cases involving resulting trusts. "Although they are often confused, resulting trusts and constructive trusts rely on two different theoretical bases." *Troxel*, 201 S.W.3d at 298. As explained by the *Troxel* court:

> Both are implied by operation of law to prevent unjust enrichment. However, a resulting trust—more accurately denominated a purchase money resulting trust—is an equitable remedy primarily involving consideration. A resulting trust arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another. The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner. The trustee of a resulting trust is generally responsible only for conveying the property to the beneficiary or in accordance with his directions.

*Id*. (citations omitted). Because it is undisputed that no consideration was paid for the real property transfer memorialized by the 1995 deed in this case, the facts herein do not involve the law concerning resulting trusts. Therefore, we interpret York's arguments as alleging the existence of a constructive trust rather than a resulting trust.

Gwendolyn died and the constructive trust ceased to exist upon her death. York misconstrues trust law and makes unsupported assumptions in crafting her argument. We find that York's claim for constructive trust relief never accrued and that the caselaw she relies on is inapplicable.

The primary weakness of York's argument is that a constructive trust is not an arrangement created by parties to a transaction to establish the rights and duties between them and which can be enforced by a trial court; rather, a constructive trust is an equitable remedy imposed by a court to prevent unjust enrichment arising from the parties' transaction. *Troxel*, 201 S.W.3d at 298. Thus, when a party asserts a constructive trust cause of action, she does not ask the court to *enforce* a constructive trust that the parties created between themselves, but instead asks the court to *impose* a constructive trust on their relationship to prevent the other party from being unjustly enriched. The constructive trust is the remedy sought, not the underlying relationship itself. *See id*. No constructive trust exists unless and until a court imposes it as a remedy. *See id.*

The trial court made no findings of fact or conclusions of law that specifically addressed York's claim for constructive trust or that found there was an agreement between York and Gwendolyn to deed the property back to York. Nor could it have because it never reached the merits of that cause of action. Instead, the court concluded that York's "claims as set forth in her pleadings [were] barred by the applicable statute of limitations." Therefore, contrary to York's assertion, the trial court did not impliedly find the existence of a constructive trust, but rather found that York waited too long to request that relief. Because no constructive trust was ever imposed, the running of the statute of limitations was not contingent upon repudiation of the non-existent constructive trust.

15

Secondly, York's claim for constructive trust relief never accrued. The law is suspicious of resulting or constructive trusts, and consequently, a heavy burden of proof is placed on the party attempting to establish the existence of one. *See Equitable Trust Co. v. Roland*, 721 S.W.2d 530, 533 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e). Additionally, as previously stated, where property is deeded from a parent to a child, it is presumed that a gift was intended. *Richardson*, 911 S.W.2d at 492. In our analysis of York's first point of error, we held that there was sufficient evidence to support the trial court's determination that the 1995 conveyance was a gift, and that holding is consistent with the trial court's conclusion of law that "Todd Boatman is the fee simple owner of the 153.185 acres of land." Based on that holding, the 1995 conveyance was a valid gift, and therefore, York's constructive trust cause of action never accrued.[10] *See Somer v. Bogart*, 749 S.W.2d 202, 204 (Tex. App.—Dallas 1988, writ denied) (no resulting trust exists until presumption of gift conveyance is rebutted); *Roland*, 721 S.W.2d at 533.

Finally, York's argument principally relies on the case of *Kostelnik v. Roberts*, 680 S.W.2d 532, 535–36 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.), for the proposition that a party in Gwendolyn's (and, by extension, Todd's) position cannot assert the doctrine of unclean hands to prevent the imposition of a constructive trust requiring the grantee to convey the property back to the grantor pursuant to their oral agreement to circumvent the Medicaid eligibility requirements. In *Kostelnik*, the grantor conveyed her property to grantee when she and her husband were required to move into a convalescent home, and then, after her husband died, she sought return of the

---

[10]York admits that, if the 1995 conveyance was a gift, "no cause[] of action could accrue" because "[t]here is no cause of action for failing to return a valid gift."

16

property pursuant to their oral agreement. *Id*. at 534–35. The trial court granted that relief and imposed a constructive trust on the property in the grantor's favor. *Id*. at 535. On appeal,

> [grantees] allege[d] that . . . [grantor] benefited from her gifts to appellants by having "defrauded the State of Texas by accepting Medicaid benefits" because she was allowed, due to her new financial status following the transfers of property, to receive Medicaid benefits from the State of Texas while residing in the convalescent home.

*Id*. The trial court refused to apply the unclean hands doctrine to that case, and the Corpus Christi Court of Appeals affirmed, holding that the State of Texas, rather than the grantee, was the one harmed by the agreement and that "[t]he party to a suit, complaining that his opponent is in court with 'unclean hands' . . . must show that he himself has been injured by such conduct, to justify the application of the principle to the case." *Id*. at 535–36. The court of appeals also noted that application of the unclean hands doctrine was "within the sound discretion of the trial court" and found no abuse of discretion in the trial court's failure to apply that equitable doctrine. *Id*. at 536.

Although the facts in *Kostelnik* are remarkably similar to the present case, York's reliance on *Kostelnik* is misplaced. In *Kostelnik*, a constructive trust existed because the trial court imposed one on the parties' agreement. The grantee sought to reverse that ruling on the basis of the unclean hands doctrine, and the court of appeals denied that relief. Here, as noted above, no constructive trust ever existed, and the trial court made no finding of an agreement to convey the property back to York. Therefore, notwithstanding the factual similarities, the holding in *Kostelnik* is simply not applicable to this case.[11]

---

[11]The facts in this case are also similar to *In re Marriage of Parker*, 997 S.W.2d 833, 837–38 (Tex. App.—Texarkana 1999, writ denied), where we refused on public policy grounds to impose a constructive trust to enforce a grantee's oral agreement to re-convey property to the grantor once the grantor's income tax problems were resolved, because "[a] grantor who conveys his property for the purpose of shielding the property from liability of future creditors, when

Accordingly, we overrule this point of error.

**III.    Conclusion**

For all of the foregoing reasons, we affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     December 23, 2015
Date Decided:       April 8, 2016

---

the purpose of such a conveyance is not to divest the grantor of beneficial interest, should not receive the aid of the courts against his grantee." *Id.*