**Affirmed in Part, Vacated and Dismissed in Part, and Memorandum Opinion filed June 4, 2026**



In The

# Fifteenth Court of Appeals

### NO. 15-25-00075-CV

**TOMMY PARKER, JR., Appellant**

**V.**

**MARY MARTHA PARRACK, Appellee**

**On Appeal from the 12th District Court
Madison County, Texas
Trial Court Cause No. 18-16110**

## MEMORANDUM OPINION

This appeal concerns a dispute between siblings over the ownership of certain rights to 780 acres of land: 100% of the surface rights and 25% of the mineral rights.[1] Tommy Parker, Jr. ("Tommy") sued his sister, Mary Martha Parrack ("Mary Martha") to invalidate a 2011 deed purportedly showing that he conveyed his share of the executive rights and the right to receive bonuses from the 780 acres to Mary

---

[1] We refer to the disputed rights collectively as "the 780 acres."

Martha and to establish that he still owns half of the 780 acres of the surface. A jury found that she did not breach her fiduciary duty to him in connection with that conveyance and that nonparty Parrack Ranch Ltd. owns all surface rights in the 780 acres. We affirm in part and vacate and dismiss in part.

## BACKGROUND

The parties' grandparents, Jim and Willie Lee Baker, owned almost 5,000 acres of ranchland near Madisonville. In 1983, the Bakers put some of that land in trust for their daughter, Linda Westmoreland. The Bakers appointed Westmoreland sole trustee and directed that the trust property be divided between Tommy and Mary Martha after her death.

To avoid gift tax consequences, the Bakers transferred small interests in the ranch into the trust every year. Jim Baker died in 1993, and Willie Lee died in 2001. By the time of Willie Lee's death, the Trust owned the 780 acres—a 447-acre tract and 339-acre tract.[2] The Bakers had also transferred various property to Tommy, including the surface rights to a separate tract called the "Garrett Place." In 2000, Tommy's aunts assigned him the executive mineral rights to the Garrett Place.

In 2002, Westmoreland conveyed the Trust's surface rights in the 447 acres to Mary Martha ("2002 Deed"), who had previously built a house there with her husband, Kevin Parrack Sr. According to Mary Martha, her mother said "rather than survey that little off, I will give you the whole tract because it is going to be yours anyway." Mary Martha and her husband subsequently added fencing, cattle guards, built additional structures, and raised crops on the land.

Shortly after Westmoreland died in 2011, Tommy signed a deed giving Mary Martha all his executive and bonus rights in the 780 acres ("2011 Deed"). After

---

[2] The tract the parties refer to as "the 339 acres" is really 333 acres.

2

recording the deed, Mary Martha signed several mineral leases for the 780 acres. When Mary Martha received bonus money from Burk Royalty, she celebrated and "felt like [Tommy] celebrated with me."

In December 2012, Mary Martha executed a deed conveying all her interests in the 339-acre tract to the Parrack Brothers Family Limited Partnership. Through a series of deeds signed in July 2015, the Parracks and various entities controlled by them conveyed all the surface rights in the 780 acres to Parrack Ranch, Ltd, a limited liability company. The general partner of Parrack Ranch Ltd. is a limited liability company controlled by Mary Martha's husband.

Tommy Parker sued his sister in 2018 seeking declarations that the 2002 Deed to Mary Martha from their mother and the 2011 Deed to Mary Martha from him are void and that Tommy and Mary Martha each own "all surface interest and one-quarter of the mineral interests" in the 780 acres, as well as a judgment for 50% of the funds Mary Martha received from any bonus payments after the 2011 Deed. Mary Martha answered and asserted the affirmative defenses of waiver and statute of limitations and objected that Tommy had failed to join all parties with rights in the 780 acres. She also sought counter-declarations that Parrack Ranch, Ltd owns all legal and equitable rights to the 780 acres; that the 2011 Deed validly conveyed Tommy's mineral and other executive rights to her; and that she is entitled to retain all bonus payments, rents, and royalties related to the 780 acres that she received since 2011.

The parties tried the case to a jury over four days in November 2024. After Tommy rested, the trial court granted a directed verdict on his claim to invalidate the 2002 Deed. At the conclusion of the trial, the jury rejected all of Tommy's claims and found, as relevant here, that Mary Martha owes a fiduciary duty to Tommy, that she did not breach the duty with respect to the 2011 Deed, and that nonparty Parrack Ranch Ltd. held the 339 acres in adverse possession for at least five years. The trial

3

court accordingly rendered judgment that nonparty Parrack Ranch Ltd. owns all legal and equitable rights in the surface of the 780 acres, that the 2011 Deed is valid, and that Mary Martha is entitled to keep the bonus payments she received.

Tommy filed a motion for new trial challenging the legal and factual sufficiency of the evidence. The motion was overruled by operation of law, and this appeal followed.[3]

## DISCUSSION

Tommy argues that there is legally and factually insufficient evidence to support the jury's finding that Mary Martha did not breach her fiduciary duty and that Parrack Ranch, Ltd., acquired the 339 acres through adverse possession.

**No Breach of Fiduciary Duty**

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages.[4] Neither party challenges the jury's finding that Mary Martha owed fiduciary duties to Tommy. A presumption of unfairness applies to transactions between a fiduciary and a party to whom he owes a duty of disclosure, and the burden is on the fiduciary to show the fairness of the transaction.[5]

A party without the burden of proof challenging the legal sufficiency of an adverse finding must demonstrate that no evidence supports the jury's finding.[6] We

---

3   The Supreme Court ordered the Tenth Court of Appeals to transfer this case to us for docket-equalization purposes. We are unaware of any conflict between the Tenth Court's precedent and our own. *See* TEX. R. APP. P. 41.3 ("[T]he court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court.").

4   *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

5   *See Austin Tr. Co. as Tr. of Bob & Elizabeth Lanier Descendants Trs. for Robert Clayton Lanier, Jr. v. Houren*, 664 S.W.3d 35, 45 n.11 (Tex. 2023); *Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 507–08 (Tex. 1980).

6   *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014); *see Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 97 (Tex. 2024).

will sustain a no-evidence point if: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact."[7] In reviewing for legal sufficiency, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."[8]

But in reviewing for factual sufficiency, we consider and weigh all the evidence.[9] When a party without the burden of proof challenges the factual sufficiency of an adverse finding, we will set aside the finding only if it is so against the great "weight and preponderance [of the evidence] as to be manifestly unjust, shock the conscience, or clearly demonstrate bias."[10]

We evaluate the sufficiency of the evidence based on the jury charge as neither party objected to it.[11] Question 18 provides:

> In regard to the transaction represented by the August 18, 2011 Special Warranty Deed, did Mary Martha Parrack fail to comply with her fiduciary duty to Tommy Parker, Jr.?
>
> Because a relationship of trust and confidence existed between them, on August 18, 2011 as a fiduciary to Tommy Parker, Jr., Mary Martha Parrack owed Tommy Parker, Jr. a fiduciary duty. To prove she complied with her fiduciary duty, Mary Martha Parrack must show by a preponderance of the evidence that:

---

[7]     *Lozada v. Posada*, 718 S.W.3d 262, 266 (Tex. 2025).

[8]     *Werner Enters. v. Blake*, 719 S.W.3d 525, 533 (Tex. 2025).

[9]     *See Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

[10]     *Windrum*, 581 S.W.3d at 782 (internal quotation marks omitted).

[11]     *See Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 426 n.32 (Tex. 2022) ("[I]t is the court's charge ... that measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

1. The transaction in question was fair and equitable to Tommy Parker Jr.; and

2. Mary Martha Parrack made reasonable use of the confidence that Tommy Parker, Jr. placed in her; and

3. Mary Martha Parrack acted in the utmost good faith and exercised the most scrupulous honesty toward Tommy Parker. Jr.; and

4. Mary Martha Parrack placed the interests of Tommy Parker. Jr. before her own and did not use the advantage of her position to gain any benefit for herself at the expense of Tommy Parker, Jr.; and

5. Mary Martha Parrack fully and fairly disclosed all important information to Tommy Parker, Jr. concerning the transaction.

The testimony of Tommy and Mary Martha paint conflicting pictures of the execution of the 2011 Deed. Tommy testified that on one of his frequent visits to Mary Martha's house, she gave him a piece of paper and asked him to sign it. According to Tommy, Mary Martha said she needed his signature "so that the oil company will give [Mary Martha] all … the bonus money" from the 780 acres "to pay [Westmoreland's] bills, expenses, and taxes." Tommy testified that he replied: "Okay. I will do it one time. I will give you the money one time" and signed the document. The document Tommy signed at Mary Martha's house is not in the record. However, Tommy later signed the 2011 Deed at Farris Insurance Company in the presence of Mary Martha and a notary, Cindy Starns. Before signing it, he says he voiced his understanding that he was making a one-time conveyance of his bonus rights, and that Mary Martha did not correct him at that time.

Mary Martha gave a different version of events in her deposition, parts of which were read into the record because she died before trial.[12] In her telling, the

---

[12] Parrack's son and executor, Kevin Parrack, Jr. continued the suit. *See* TEX. R. CIV. P. 151.

only time Tommy signed any document conveying his rights was at Farris Insurance. She confirmed that she asked him to give her his rights in the 780 acres because she "needed the money" for expenses related to Westmoreland's estate. Both parties considered the arrangement fair because Tommy had received all the lease money and executive rights from the Garrett Place years earlier. Mary Martha denied any intent to deceive Tommy and, in fact, made sure that he understood the terms of the agreement. She later received a substantial bonus payment and felt that Tommy "celebrated with [her]." She was not aware that Tommy felt that she deceived him until just before he sued her.

Two witnesses supported her testimony. Mary Martha's husband testified that he was present during the signing because he rented an office in the same building. Tommy indicated in conversation that he understood that he was conveying the executive rights and bonus interest "for all time." The notary, Cindy Starns, confirmed that she notarized the 2011 Deed. She remembered Tommy because it was the only time he asked her to notarize a document. Starns testified that she always asks the person appearing before her to read the document in front of her and affirm their understanding of it.

When evidence conflicts, it is the jury's responsibility "to evaluate the credibility of the witnesses and reconcile any inconsistencies," and it may "believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness."[13] The jury apparently credited Mary Martha's version, and we must defer to that reasonable decision.[14] Considering the record in that light, there was legally sufficient evidence that Tommy knew he was transferring his rights in the 780 acres to Mary Martha and believed that doing so would be fair given that

---

[13] *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018).

[14] *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005) (reviewing court must defer to jury's reasonable determinations on the credibility of witnesses).

he had already received similar rights in the Garrett Place. And the jury could reasonably infer from the notary's testimony that Tommy read the 2011 Deed in her presence and affirmed to her that he understood it.[15] Applying the appropriate standard, we conclude that the jury could reasonably find that Mary Martha proved all five elements by a preponderance of the evidence.

In reviewing for factual sufficiency, we also consider the contrary evidence. Texas courts have identified four "important considerations" in assessing the fairness of the transaction: "whether (1) there was full disclosure, (2) the consideration was adequate, (3) the party to whom the fiduciary duty is owed had the benefit of independent advice, and (4) the fiduciary benefited at the other's expense."[16] Tommy argues that all but one of the considerations support a finding that the transaction was unfair: he received no consideration, he did not have the benefit of independent advice, and Mary Martha significantly benefited from the transaction.[17] But there was no consideration because, on the facts determined by the jury, the 2011 Deed was intended as a gift.[18] A gift from the principal to a fiduciary is permissible if it meets the same "fair and reasonable" standard as an exchange for value.[19] And while the benefit of independent advice is an important consideration

_____

[15] *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024) (jury may "draw reasonable inferences from basic facts to ultimate facts").

[16] *Hrdy v. Second St. Props. LLC*, 649 S.W.3d 522, 539 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).

[17] Tommy also argues that whether Mary Martha made full disclosure is "disputed." But the jury resolved that dispute in her favor, and we may not substitute our judgment. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 677 n.12 (Tex. 2020) (explaining that even under factual sufficiency review, the jury "remains the sole judge of witnesses' credibility and the weight to be given their testimony").

[18] *See Haile v. Holtzclaw*, 414 S.W.2d 916, 927 (Tex. 1967) (transfer of property without consideration constituted gift); *York v. Boatman*, 487 S.W.3d 635, 642 (Tex. App.—Texarkana 2016, no pet.) ("The elements of a valid gift by deed are: (1) donative intent, (2) delivery of the property, and (3) acceptance of the property.").

[19] *See, e.g.*, *Musquiz v. Keesee*, 2017 WL 4341463, at *7 (Tex. App.—Amarillo Sept. 28,

in determining the fairness of a transaction,[20] its absence is not always dispositive. Considering this contrary evidence together with the supporting evidence detailed above, we conclude that the jury's finding that Mary Martha did not breach her fiduciary duty was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

**Adverse Possession of the 339 acres**

Turning to the adverse-possession finding, the jury found that Parrack Ranch, Ltd., a nonparty, held the 339 acres in adverse possession for at least five years. The trial court, in turn, declared that Parrack Ranch owns all legal and equitable rights in the surface of the 780 acres. Tommy argues that there is legally and factually insufficient evidence that Parrack Ranch held the 339 acres in adverse possession.

But Parrack Ranch is not a party to this case. Rule 39 provides that a person "shall be joined" as a party if "in his absence complete relief cannot be accorded among those already parties."[21] Mary Martha objected in her answer that Tommy failed to sue all necessary parties because "persons other than" the siblings "have an interest" in the 780 acres, and sought a declaration that Parrack Ranch, Ltd. owned "all legal and equitable rights, title and interest," but no one bothered to join or appear by pleadings or at trial for that entity.[22]

A substantial part of the trial involved competing claims as to whether the Parrack's activities regarding the ranch were sufficient to oust a co-tenant like Tommy by adverse possession.[23] But rendering judgment for or against a nonparty

---

2017, pet. denied); *Estate of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

[20]     *Hrdy*, 649 S.W.3d at 547.

[21]     TEX. R. CIV. P. 39(a)(1). Rule 39 applies in declaratory-judgment proceedings. *See In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023).

[22]     She did not mention Parrack Ranch, Ltd. or seek to join it as a party.

[23]     *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011) ("In an adverse possession

implicates the trial court's jurisdiction,[24] which we may consider for the first time on appeal even if no party has questioned it.[25] A declaratory judgment is appropriate when a real controversy exists "as to the rights and status of parties *actually before the court* for adjudication."[26] A judicial decision without a real controversy is an advisory opinion,[27] which Texas courts lack jurisdiction to issue.[28] Because Parrack Ranch is not a party to this case, the trial court lacked jurisdiction to declare its rights as to the 339 acres or the entire 780 acres. Consequently, the portions of the judgment declaring that Parrack Ranch held the 339 acres in adverse possession and so owns all the surface rights to the 780 acres are "purely advisory."[29]

## CONCLUSION

We vacate the trial court's judgment as to Parrack Ranch's ownership of the 780 acres for want of jurisdiction. The judgment is otherwise affirmed.

/s/      Scott A. Brister
Scott A. Brister
Chief Justice

---

claim between cotenants, the proponent must prove ouster—unequivocal, unmistakable, and hostile acts the possessor took to disseize other cotenants.").

[24] *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004) (denying declaratory judgment as to rights of homeowners not joined in the lawsuit as any opinion interpreting their rights "would be purely advisory").

[25] *1 Coventry Court, LLC v. Downs of Hillcrest Residential Ass'n*, 728 S.W.3d 711, 712 (Tex. 2026).

[26] *Brooks*, 141 S.W.3d at 163–64 (emphasis added); *see Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021) ("A declaratory judgment is therefore appropriate when a real controversy exists *between the parties*." (emphasis added)).

[27] *Brooks*, 141 S.W.3d at 164.

[28] *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 862 (Tex. 2025).

[29] *See Brooks*, 141 S.W.3d at 163–64.

Before Chief Justice Brister and Justices Field and Farris.