# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 10, 2024

Lyle W. Cayce
Clerk

No. 23-11272

IN THE MATTER OF RICHARD K. ARCHER AND RUTH E. ARCHER,

*Debtors*,

KENT RIES,

*Appellant*,

*versus*

ESTELLE ARCHER; BRANCH T. ARCHER, III; CARAJEAN ARCHER; DR. RICHARD K. ARCHER, JR.; NATALIE ARCHER,

*Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:22-CV-198

_____

Before HIGGINBOTHAM, STEWART, and HAYNES, *Circuit Judges*.

PER CURIAM:[*]

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-11272

In this bankruptcy case, the Trustee of the debtors' estate contends that two Texas farms belong to the estate because one of the debtors, now deceased, never intended to transfer ownership to his children. After a trial, the bankruptcy court disagreed, and the district court adopted the bankruptcy court's findings. Because the lower courts' conclusion is not clearly erroneous, we AFFIRM.

## I.     Background

### A. Underlying Facts

Richard K. Archer and his wife had eight children (the "Siblings"). Three of the Siblings—Branch Archer, Estelle Archer, and Richard Archer Jr.—are defendants in this case. As of 1988, Archer[1] owned a farm in Moore County. He also owned farmland in Randall County.

### 1.  *The Moore County farm*

John David Allison is Archer's son-in-law; he married Eileen Archer in 1984. In 1988, Allison signed a warranty deed purporting to grant the Moore County farm to the Siblings' individual retirement accounts for $10. The 1988 deed had some issues that will be discussed below. Notably, the parties stipulated before trial that Branch, Estelle, and Richard Jr. (together the "Defendant Siblings") have legal title to the property.

Around the same time, Archer and his wife entered into an agreement regarding the Moore County farm with six of their children, including Branch and Estelle but not Richard Jr. The agreement "acknowledged" that certain "monies" were "used to buy the Moore County farmland" for "the Richard Archer children." Further, the agreement provided that Archer and his wife

_____

[1] Throughout this opinion we will refer to Archer Sr. as "Archer" and to the Siblings by their first names.

would continue to manage the Moore County farm as they saw fit and distribute profits to the Siblings "on the basis of acreage owned."

Archer retained ultimate control of the Moore County farm until at least 2016, but the Siblings were involved in managing the farm to varying degrees. Archer never shared profits or lease income with the Siblings, although he did pay to put them through medical school.[2]

The 1988 deed was not the only deed purporting to transfer ownership of the Moore County farm. In 2006, Archer executed a warranty deed purporting to transfer the farm to the Defendant Siblings. Further, in 2014, Archer executed three quitclaim deeds purporting to transfer the Moore County farm to the Defendant Siblings' IRAs. The 2006 and 2014 deeds were recorded in Moore County. Through a series of additional deeds, the Defendant Siblings received the other Siblings' respective interests in the Moore County farm. The Defendant Siblings never paid or provided consideration for these transfers.

### 2. The Randall County farm

In 2008, Richard Jr. purchased the Randall County farm from Lamb Agri, LLC, which was owned and directed by Archer. A deed memorializing the sale was recorded the same year.

Richard Jr. testified that he paid $1.3 million to Archer for the Randall County farm. A short time later, Archer paid back to Richard Jr. a sum of at least $500,000, which Richard Jr. used to improve his home.

### 3. The insurance fraud

Between approximately 2005 and 2017, Archer instructed certain of his children, grandchildren, and farmworkers to sign up as "new producers"

---

[2] Seven of the eight Siblings, including the Defendant Siblings, became physicians.

for the Moore County farm through the Federal Crop Insurance Program and thus receive favorable crop insurance indemnities not otherwise available to experienced farmers. Estelle, Richard Jr., and BTA III Family Holdings, Ltd. Co. ("BTA III")—an entity Branch created in the 1990s—were involved in the scheme, holding themselves out as exercising managerial control over the farm even though they did not exercise such control. The scheme also involved Archer's land in Randall County.

For their roles in the scheme, Estelle, Richard Jr., and BTA III were convicted of insurance fraud. They were required to collectively pay $3.1 million in restitution.

## B. Procedural History

Archer and his wife filed for bankruptcy under Chapter 7 of the Bankruptcy Code on February 24, 2017. The Trustee of the bankruptcy estate filed the instant adversary proceeding, in which he sought a declaration that the Moore County and Randall County farms are not owned by the defendants[3] but are rather properties of the estate. Archer died shortly before trial; accordingly, we don't have testimony directly from him.[4]

The Trustee argued that Archer never properly transferred the two farms to the defendants. Despite conceding that the Defendant Siblings had legal title, he contended that the 1988 and 2008 deeds are void and that Archer never intended to deliver any relevant deed to the Siblings. The

---

[3] The defendants in the bankruptcy court were the Defendant Siblings; Branch's spouse, Carajean Archer; Richard Jr.'s spouse, Natalie Archer; and Advanta IRA Trust, LLC, with which the Defendant Siblings have self-directed IRAs. The parties stipulated in the bankruptcy court that the Defendant Siblings' spouses and IRAs would respectively be bound by rulings regarding the Defendant Siblings' ownership (or lack thereof) of the Moore County and Randall County farms.

[4] His wife has also passed away.

Trustee argued that the two farms thus remained Archer's property when he filed for bankruptcy and that the farms should be declared property of the bankruptcy estate. He accordingly sought a declaratory judgment and asked the bankruptcy court to order the defendants to sign any interests they have in the Moore County and Randall County farms over to Archer's bankruptcy estate.

Before trial, the parties entered the pretrial stipulation regarding legal title. They agreed in writing that legal title, as distinguished from equitable title, to the Moore County farm is "vested in the name of the Defendants." The stipulation, by its terms, was intended to "focus[] the trial on whether the Plaintiff or Defendants actually own the Moore county land."

After a four-day trial, the bankruptcy court rejected the Trustee's arguments and denied relief. The Trustee appealed to the district court, which adopted the bankruptcy court's findings of fact and conclusions of law and entered judgment accordingly. The Trustee timely appealed to this court.

## II.　Jurisdiction & Standard of Review

The bankruptcy court had jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. *See generally SR Constr. Inc. v. RE Palm Springs II, L.L.C. (In re RE Palm Springs II, L.L.C.)*, 106 F.4th 406, 411–12, 415 & nn.2–3 (5th Cir. 2024) (discussing the jurisdiction of bankruptcy courts); *see also* Fed. R. Bankr. P. 7001(1)–(2), (7), (9) (stating that adversary proceedings include proceedings to recover money or property, proceedings to determine the validity or extent of an interest in property, proceedings to obtain equitable relief, and proceedings to obtain a declaratory judgment relating to the foregoing). The district court had jurisdiction over the Trustee's initial appeal. *See* 28 U.S.C. § 158(a); Fed. R. Bankr.

P. 8003. We have jurisdiction over the instant appeal pursuant to 28 U.S.C. §§ 158(d)(1) and 1291.

In bankruptcy cases like this one, in which we review the decision of a district court that sat as an appellate court, we apply "the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *ProEducation Support Servs. v. Mindprint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 299 (5th Cir. 2009) (alterations adopted) (quotation omitted). Conclusions of law are reviewed *de novo*, and findings of fact for clear error. *Perry v. Dearing* (*In re Perry*), 345 F.3d 303, 309 (5th Cir. 2003). Under the clear error standard, we may only set aside findings of fact if we are left with "the definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). Reversal is not appropriate merely because we "would have weighed the evidence differently"; if there are "two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie Inc.*), 713 F.3d 285, 294 (5th Cir. 2013) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). The district court applied these standards of review when it reviewed the bankruptcy court's findings of fact and conclusions of law in this case.

## III.   Discussion

The Trustee raises two issues on appeal. First, the Trustee argues that the 1988 deed is void and thus never transferred ownership of the Moore County farm to the Siblings. Second, he contends that Archer never truly intended to transfer the Moore County or Randall County farms to the Siblings and thus never actually relinquished ownership or conveyed ownership to the Siblings.

No. 23-11272

Our treatment of these issues proceeds as follows.  First, we briefly discuss the Randall County farm, as the parties focus mostly on the Moore County farm.  Second, we ask whether the trial court[5] erred in declining to decide whether the 1988 deed is void.  Finally, we discuss whether the trial court erred in concluding that Archer intended to convey the Moore County farm to the Siblings.

## A.  The Randall County Farm

The Trustee has forfeited any argument that the trial court erred with respect to the Randall County farm.  The Trustee's briefs refer to the Moore County and Randall County farms together as simply the "Property," but he fails to make specific contentions regarding the Randall County farm.  He does not discuss the 2008 deed purporting to transfer the Randall County farm, the associated $1.3 million transaction between Archer and Richard Jr., or any other facts concerning the Randall County farm specifically.

The Trustee also fails to challenge any of the trial court's findings regarding the Randall County farm in particular.  Further, the Trustee did not respond to the Defendant Siblings' contention that the Trustee forfeited any issue implicating the Randall County farm.  Accordingly, we affirm the trial court to the extent it rejected the Trustee's arguments regarding the Randall County farm. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 & n.1 (5th Cir. 2021) (stating that a party forfeits an argument by "failing to adequately brief the argument on appeal"); *Duncan v. Wal–Mart La., L.L.C.*, 863 F.3d 406, 408 n.2 (5th Cir. 2017) (stating that appellants abandoned issue

---

[5] Because the district court adopted the bankruptcy court's findings of fact and conclusions of law, we refer to the two courts collectively as the "trial court."

where they barely discussed it in their opening brief and failed to respond on reply to appellee's discussion of issue).[6]

### B. The 1988 Deed

In the trial court, the Trustee argued that the 1988 deed purporting to transfer the Moore County farm is void for lack of a grantor and grantee. The trial court acknowledged that the 1988 deed "does not reflect that the Moore County Farm was conveyed by Archer to any or all of the Archer Siblings." But the trial court determined that it did not need to reach the issue of the deed's validity, given (1) the parties' stipulation that, as the trial court put it, "*some* deed" was effective to pass apparent title and (2) that the 2006 and 2014 deeds also purported to transfer title to the Moore County farm to the Defendant Siblings. The Trustee contends that this was error.

We agree with the trial court that it is not necessary to determine the validity of the 1988 deed. The Trustee argues that if the 1988 deed is void, all subsequent transfers of the Moore County farm—such as the transfers memorialized by the 2006 and 2014 deeds—are also void because they

_____

[6] Even if this argument was not forfeited, we would affirm the trial court's decision not to declare that the bankruptcy estate, rather than Richard Jr., owns the Randall County farm. The 2008 deed meets the requirements for a properly executed deed under Texas law: it lists Richard Jr. as grantee, describes the Randall County farm, is signed by Archer, has language clearly evincing intent to transfer ownership, and was recorded in the county records. *See Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (listing characteristics of properly executed deed). Further, unlike the Moore County conveyances in this case, this transfer involved consideration: Richard Jr. paid Archer for the farm. *Cf. Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (stating that burden of proving a *gift* is upon party claiming the gift was made). Finally, the trial court found that Richard Jr. paid expenses related to the farm and negotiated an agreement in 2008 with the U.S. Department of Agriculture to preserve parts of the farm. *Cf. Richardson v. Laney*, 911 S.W.2d 489, 492–93 (Tex. App.—Texarkana 1995, no writ) (stating that presumption of donative intent can be rebutted if grantor continued to control the property). The Trustee does nothing on appeal to challenge these findings.

depended on the validity of the 1988 deed, but this argument is backward. Archer himself executed and signed the 2006 and 2014 deeds; those deeds would be invalid if the 1988 deed purporting to transfer the Moore County farm to the Siblings *was* valid, not if it was invalid.[7]

The Trustee's reliance on *In re Marriage of Merrikh*, No. 14-14-00024-CV, 2015 WL 2438770 (Tex. App.—Houston [14th Dist.] May 19, 2015, pet. denied) (mem. op.), illustrates the point. There, the court held that a deed granting property from a woman to her father-in-law was void and thus that a subsequent deed between the *father-in-law* as grantor and a third-party grantee was also void. *Id.* at *7–8. Here, the Siblings are in the position of the father-in-law in *Merrikh*, but it was Archer, not the Siblings, who executed the subsequent deeds. We accordingly reject the Trustee's argument that the trial court erred in declining to invalidate the 1988 deed.

## C. Archer's Intent to Convey

We next consider whether the trial court erred in declining to find that Archer lacked intent to convey the Moore County farm to the Defendant Siblings. To analyze this issue, it is necessary to first discuss relevant principles of Texas property law.

Legal title to property is "title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet.

---

[7] The grantors on the 2006 and 2014 deeds were listed as, respectively, the "Richard K. Archer Profit Sharing Trust" and the "Richard K Archer MDPA Profit Sharing Plan." The Trustee argues that there is no evidence that these grantors existed or that they held title to the Moore County farm. But it was the Trustee's—not the Defendant Siblings'—burden, especially in light of the parties' stipulation of legal title, to show that the grantors were invalid. Even if there is evidence in the record affirmatively suggesting that the grantors and grantees listed on the 1988 deed were invalid, the same is not true with respect to the subsequent deeds.

denied) (quoting BLACK'S LAW DICTIONARY 1523 (8th ed. 2004)). Equitable title, on the other hand, is "title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." *Id.* (quotation omitted).

Under Texas law, a conveyance of an interest in real property is effective and title is transferred upon (1) execution of a deed and (2) delivery of the deed. *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 869 (Tex. App.—Dallas 2005, no pet.). A deed is properly executed if

> (1) from the instrument as a whole a grantor and grantee can be ascertained and (2) there are operative words or words of grant showing an intention by the grantor to convey to the grantee title to a real property interest, (3) which is sufficiently described, and (4) the instrument is signed and acknowledged by the grantor.

*Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Delivery of a deed is established where (1) the deed was "delivered into the control of the grantee" and (2) the grantor "intend[ed] the deed to become operative as a conveyance." *Adams*, 154 S.W.3d at 869.

The issue of whether Archer effectively transferred the Moore County farm to the Defendant Siblings ultimately turns on whether he "intend[ed] the deed to become operative as a conveyance." *Id.* As the Trustee acknowledges, the facts of this case give rise to a presumption that Archer intended to transfer the farm.

The presumption of intent arises for two reasons. Generally, the burden of proving that a conveyance of real estate constituted an *inter vivos* gift—as is the case here—is on the party claiming the gift was made. *Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983,

writ ref'd n.r.e.).[8] But if the deed was recorded, a "prima facie case of delivery and the accompanying presumption that the grantor intended to convey the land according to the terms of the deed is established." *Rothrock v. Rothrock*, 104 S.W.3d 135, 138 (Tex. App.—Waco 2003, pet. denied). Similarly, where property "is deeded from a parent to a child or children, it is presumed that a gift was intended." *Richardson v. Laney*, 911 S.W.2d 489, 492 (Tex. App.—Texarkana 1995, no writ). Here, (1) the 2006 and 2014 deeds were recorded, and (2) the purported conveyance was between Archer and his children, so the presumption is doubly established.

The presumption can be rebutted by clear and convincing evidence of a lack of donative intent. *Id.* Such evidence can include a showing that the ostensible grantor "did not relinquish possession, but continued to live in and control the real property." *Id.* at 493.

The trial court concluded that the Trustee had not shown by a preponderance of the evidence that Archer did not intend to transfer ownership of the farm to the Defendant Siblings.[9] The court emphasized evidence in the record tending to show that the Defendant Siblings "shared significant responsibilities of ownership." The trial court was not overly troubled by Archer's continued management of the farm, noting that the Siblings did not have to exclusively possess the farm to obtain title. *See Woodworth*, 600 S.W.2d at 564 ("While possession of the property is

---

[8] There was no consideration, monetary or otherwise, given in connection with the purported conveyances of the Moore County farm.

[9] Because of this conclusion, which the Trustee has not shown is clearly erroneous, we reject the Trustee's argument that the trial court based its determination of the intent issue solely on the parties' pretrial stipulation that the Defendant Siblings have legal title to the Moore County farm.

essential in order for the gift to ripen into title, it need not be exclusive possession.").

Because we are not left with "the definite and firm conviction that a mistake has been committed," *Perry*, 345 F.3d at 309 (quotation omitted), we affirm the trial court's refusal to set aside Archer's conveyance of the Moore County farm. The evidence in the record, such as the Defendant Siblings' collection of rent, payment of expenses, and receipt beginning in 1998 of Conservation Reserve Program ("CRP") payments for sections of the Moore County farm, supports the trial court's conclusion.

Further, intent "is a fact question uniquely within the realm of the trier of fact." *Husky Int'l Elecs., Inc. v. Ritz* (*In re Ritz*), 832 F.3d 560, 569 (5th Cir. 2016) (quoting *Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 754 (Tex. App.—Fort Worth 2005, pet. denied)). That is because a finding of intent "so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Flores*, 161 S.W.3d at 754 (quoting *Coleman Cattle Co. v. Carpentier*, 10 S.W.3d 430, 433 (Tex. App.—Beaumont 2000, no pet.)); *see also id.* at 755 ("The question of whether a debtor conveyed property with the intent to defraud creditors is ordinarily a question for the jury or the court passing on the fact." (internal quotation marks and citation omitted)). Here, there was a four-day trial at which the bankruptcy judge observed the witnesses and heard their testimony. The trial court was in the best position to weigh the witnesses' credibility and determine whether Archer intended to transfer the farm.

The Trustee argues that the Archers' insurance fraud shows that the purported transfer of the Moore County farm was never intended to be a real conveyance, but the Trustee has not shown that the trial court clearly erred in concluding that the Defendant Siblings' "legitimate activities concerning the farm—such as with the CRP program and energy leases—bore no

relation to the insurance scam." The Trustee does not point to any evidence explicitly linking the fraud to any deed purporting to transfer ownership of the Moore County farm.

The Trustee further contends that the Defendant Siblings' fraud convictions conclusively establish that Archer never relinquished ownership of the farm, but that is not true. The Trustee conflates ownership with management; the fraud was accomplished by misrepresenting the extent to which Archer continued to exercise *managerial control*, not ownership, over the farm.[10] Even if we "would have weighed the evidence differently," we conclude that the trial court's "view[] of the evidence" was within the range of "permissible" interpretations. *Crescent Elec. Supply Co.*, 713 F.3d at 294 (quoting *Anderson*, 470 U.S. at 574).

## IV.    Conclusion

For the reasons above, we AFFIRM the judgment of the district court.

---

[10] The Trustee retreats from this argument in his reply brief, seeming to acknowledge the lack of evidence that the transfer of the Moore County farm was "part of" the fraud scheme and to concede that the fraud convictions do not conclusively establish who owned the farm at any given time. The Trustee maintains that the convictions do establish that Archer continued to manage the farm. But, again, this evidence is merely circumstantial with respect to Archer's intent to transfer ownership of the land. The Trustee has not shown that the trial court clearly erred in concluding that—in spite of Archer's continued management of the farm—the Defendant Siblings engaged in legitimate farm activities sufficient to support a conclusion that Archer truly intended to convey the property under the circumstances of this case.